Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 10, 2018

2018 CO 95

**No. 16SC916, *Thompson v. Catlin*—Appellate Mandate—Garnishment—Prejudgment Interest.**

At issue in this garnishment proceeding is the amount of insurance proceeds owed to Petitioners.  The court of appeals has grappled with the amount of this debt on four separate occasions.  In *Thompson v. United Securities Alliance Inc.* (*Thompson IV*), 2016 COA 128, ¶ 27, __ P.3d __, a division of the court of appeals upheld the district court's determination of attorney fees and costs that the insurance company may deduct from the liability limit under its policy.  It is this decision in *Thompson IV* about fees and costs that the supreme court reviews.  First, it addresses whether the *Thompson IV* division erred when it upheld the district court's decision to consider new evidence on remand from *Thompson v. United Securities Alliance, Inc.* (*Thompson III*), No. 13CA2037, (Colo. App. Oct. 16, 2014).  Because the *Thompson IV* division reasonably construed the mandate issued by the *Thompson III* division, the supreme court perceives no error.  Second, it addresses whether the *Thompson IV* division erred when it held that Petitioners are not entitled to prejudgment interest in a garnishment proceeding.  The supreme court concludes that the division erred:  Petitioners are entitled to prejudgment interest under

section 5-12-102, C.R.S. (2018).  Accordingly, as to the first issue, the judgment of the court of appeals is affirmed.  As to the second, it is reversed.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 95

**Supreme Court Case No. 16SC916**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA964

### Petitioners:

Mark L. Thompson and Rosalin Rogers,

v.

### Respondent:

Catlin Insurance Company (UK) Ltd.

### Judgment Affirmed in Part and Reversed in Part
*en banc*
December 10, 2018

**Attorneys for Petitioners:**
Sherman & Howard L.L.C.
Christopher R. Mosley
Christopher M. Jackson
*Denver, Colorado*

**Attorneys for Respondent:**
Gordon & Rees LLP
John R. Mann
*Denver, Colorado*

**Attorney for Amicus Curiae Colorado Trial Lawyers Association:**
The Gold Law Firm, LLC
Michael J. Rosenberg
*Greenwood Village, Colorado*

**Attorneys for Amicus Curiae United Policyholders:**
Colorado Insurance Law Center
Damian J. Arguello
    *Westminster, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.
**JUSTICE GABRIEL** concurs in part and dissents in part, and **JUSTICE BOATRIGHT**
and **JUSTICE HART** join in the partial concurrence and partial dissent.

¶1     At issue in this case are insurance proceeds owed to Petitioners Rosalin Rogers and Mark Thompson because of a botched property investment orchestrated by their broker-dealer, United Securities Alliance. Some ten years into this seemingly interminable litigation, no one now questions that United's insurer, Respondent Catlin Insurance, must pay Petitioners under a professional liability insurance policy that Catlin issued. Rather, it is the amount of the debt that has occupied several Colorado courts for much of the last decade.

¶2     The court of appeals has grappled with Catlin's debt to Petitioners on four separate occasions. At the end of round four, a division of the court of appeals upheld the district court's determination of attorney fees and costs that Catlin may deduct from the liability limit under Catlin's policy. *Thompson v. United Sec. All., Inc.* (*Thompson IV*), 2016 COA 128, ¶ 27, __ P.3d __. It is this decision in *Thompson IV* about fees and costs that we now review.

¶3     We first address whether the *Thompson IV* division erred when it upheld the district court's decision to consider new evidence on remand from *Thompson v. United Securities Alliance, Inc.* (*Thompson III*), No. 13CA2037, (Colo. App. Oct. 16, 2014). Because the *Thompson IV* division reasonably construed the mandate issued by the *Thompson III* division, we perceive no error.

¶4     Our second task is to decide whether the *Thompson IV* division erred when it held that there was no legal basis for awarding prejudgment interest in a garnishment proceeding. We conclude that the division did err and that Petitioners are entitled to prejudgment interest.

¶5 Accordingly, as to the first issue, we affirm the judgment of the court of appeals. As to the second, we reverse and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶6 Petitioners, through United, invested in a warehouse property only to learn that (1) the warehouse was, in Petitioners' estimation, "obsolete"; (2) the seller had purchased the warehouse only three years earlier for significantly less than Petitioners paid; and (3) the subtenant was not credit-worthy. After Petitioners' investment tanked, they commenced arbitration against United. In two separate arbitration proceedings, the panels each ruled in favor of Petitioners and awarded damages. Petitioners then went to district court to confirm the award. Once confirmed, Petitioners began the arduous journey toward claiming insurance proceeds from United's insurance company, Catlin.

¶7 To receive the proceeds, Petitioners filed a writ of garnishment against Catlin. Catlin responded by arguing that United's insurance policy with Catlin didn't cover the underlying claim at issue. The district court disagreed and found coverage. Catlin then asserted that the insurance policy allowed it to deduct from the policy's liability limit "reasonable and necessary fees and costs" incurred in its defense of United. No one disputes this. To prove their costs and fees, Catlin submitted invoices that were heavily redacted, apparently out of a concern that their disclosure might adversely affect another, unrelated case. However, the district court was unable to make heads or tails out of the redacted invoices. Flummoxed, it found that Catlin could deduct nothing from the policy's $1 million limit. Catlin appealed.

¶8      A division of the court of appeals upheld the judgment as to insurance coverage, but reversed the district court on fees and costs. The division reasoned that even the redacted invoices demonstrated that Catlin had incurred at least *some* reasonable fees and costs. Catlin then claimed a total of roughly $550,000 in fees and costs. As a result, Catlin paid Petitioners about $450,000—the undisputed amount left over after Catlin deducted from the $1 million policy limit its claimed attorney fees and costs—with the validity of the $550,000 deduction to be determined on remand in district court.

¶9      On remand, the district court was still unable to decipher the redacted invoices. To come up with some calculation, as the court of appeals required, the district court simply extrapolated from *Petitioners'* attorney fees and costs in the two underlying arbitrations, which totaled $320,000. Apparently deciding that what's good for the goose is good for the gander, the district court held that Catlin could likewise deduct $320,000 from the policy limit. Catlin again appealed.

¶10     A division of the court of appeals again reversed, reasoning that the district court had failed to make sufficient findings of fact to support its determination. *Thompson III*, slip op. at 7–8. Specifically, the division couldn't determine how the district court correlated the Petitioners' attorney fees to Catlin's. *Id.* So, it remanded "for the district court to make a more specific determination of the reasonable costs and fees that Catlin may deduct." *Id.* at 11. The court of appeals also gave the more specific instructions at issue here:

> The order is reversed and remanded with instructions to calculate the reasonable costs and fees that Catlin may deduct from the policy limit. In doing so, the court is directed to review the existing record, and from this

5

record, calculate the amount of expenses that Catlin reasonably incurred in each of the [two] arbitrations; and to identify any factors and calculations used in making this calculation.

*Id.* at 15.

¶11 On remand, the district court ordered additional briefing. Catlin then radically altered the landscape of the case by finally submitting the unredacted invoices. Petitioners objected and moved to strike, claiming that submission of the unredacted invoices exceeded the scope of the *Thompson III* mandate. The district court denied the motion.

¶12 With decipherable invoices now in hand, the district court calculated Catlin's reasonable expenses. Of the some $550,000 that Catlin requested, the district court found around $450,000 reasonable and ordered Catlin to pay the remaining balance of approximately $100,000. The district court did not require Catlin to pay pre- or post-judgment interest.

¶13 This time, Petitioners appealed. They argued that the district court exceeded "the existing record" mandate when it reviewed the unredacted invoices. Petitioners also contended that the district court erred in failing to order any prejudgment interest.

¶14 The *Thompson IV* division majority disagreed on both grounds. As to the first issue, the majority reasoned that the *Thompson III* division's mandate—when read in context—didn't preclude the district court from examining the unredacted invoices. *Thompson IV*, ¶ 12. Rather, given the specific factors that the previous division had presented the district court, the direction to look to the existing record "was merely a way to reassure the district court that it need not start from scratch but could instead perform

6

the necessary factfinding and calculations based on the indisputably less-than-ideal evidence in the record." *Id.* at ¶ 21. Finally, the division unanimously held that there wasn't a legal basis for awarding Petitioners any prejudgment interest. *Id.* at ¶¶ 30–32.

¶15 But Judge Webb dissented as to the majority's ruling on the scope of the mandate. To him, the language of the *Thompson III* mandate was abundantly clear: The district court was only to look to "the existing record" and nothing else. *Id.* at ¶ 41 (Webb, J., dissenting). He also reasoned that the *Thompson III* mandate simply sought a better explanation from the district court, not better evidence. *Id.* at ¶ 48. Finally, Judge Webb considered the majority's conclusion unfair, as it gave Catlin a second chance to submit invoices after Catlin had made a tactical decision to submit only redacted ones. *Id.* at ¶¶ 52–53.

¶16 We granted certiorari.[1]

---

[1] We granted certiorari to review the following issues:

1. [REFRAMED] Whether the court of appeals erred in concluding that the district court, in considering additional evidence on remand, did not act beyond the scope of a remand order instructing the court to review "the existing record."

2. [REFRAMED] Whether the court of appeals erred in concluding that there is no legal basis for awarding prejudgment interest in a garnishment proceeding.

## II. Analysis

¶17 First, we address the mandate issue. We conclude that the *Thompson IV* division didn't err when it determined that the district court complied with the *Thompson III* mandate.

¶18 Second, we discuss prejudgment interest. We conclude that Petitioners are entitled to prejudgment interest.

## A. The *Thompson III* Mandate

¶19 Viewed in the broader context of this lengthy dispute, the *Thompson IV* division reasonably construed the *Thompson III* mandate. We reach this conclusion in four steps. First, we outline the standard of review. Second, we describe the mandate rule. Third, we note that the court of appeals is entitled to some discretion in reviewing its own mandate. Fourth, we consider some practical problems that would result from reversing the court of appeals in this case.

### 1. Standard of Review

¶20 Whether the district court followed the court of appeals' mandate is an issue of law that we review de novo. *See Pandy v. Indep. Bank*, 2016 CO 49, ¶ 13, 372 P.3d 1047, 1049.

### 2. The Mandate Rule

¶21 There is no dispute that a lower court must follow the law of the case as laid out by an appellate tribunal. *People v. Roybal*, 672 P.2d 1003, 1005 (Colo. 1983) ("The law of the case as established by an appellate court must be followed in subsequent proceedings before the trial court."). Doing so has the dual benefits of promoting judicial economy

and ensuring that lower courts follow appellate decisions. *See Super Valu Stores, Inc. v. Dist. Court In and For Weld Cty.*, 906 P.2d 72, 79 (Colo. 1995). But it's also true that a trial court may allow additional pleadings so long as those pleadings don't violate the appellate mandate. *Rogers v. Hill*, 289 U.S. 582, 587–88 (1933) (finding that a "mandate would not prevent the District Court in the exercise of [its] sound discretion from allowing [a] plaintiff, were adequate showing made, to file additional pleadings, vary or expand the issues, and take other proceedings to enforce the accounting sought by his bills of complaint"). So, the salient question becomes: How much discretion does one division of the court of appeals have in reviewing the mandate of another division?

### 3. The Court of Appeals Has Discretion in Reviewing Its Own Mandate

¶22 Without question, the court of appeals has broad discretion to review compliance with its mandate. Indeed, the court of appeals reviews de novo whether a trial court violated an appellate mandate. *See, e.g.*, *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895) ("[I]t is for this court to construe its own mandate . . . ."); *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 950 (Fed. Cir. 1997) ("Since here we interpret our own, not a trial court's order, it seems all the clearer that no deference is due."); *City Council of Cherry Hills Vill. v. S. Suburban Park & Recreation Dist.*, 219 P.3d 421, 423 (Colo. App. 2009) ("[W]e review de novo whether a trial court has complied with a prior appellate ruling.") (citing *Hardesty v. Pino*, 222 P.3d 336, 339 (Colo. App. 2009)); *Gannon v. State*, 368 P.3d 1024, 1039 (Kan. 2016) ("Interpretation of an appellate court mandate and the determination of

9

whether the district court complied with it on remand are both questions of law subject to de novo review.") (quoting *State v. Morningstar*, 329 P.3d 1093, 1096–97 (Kan. 2014)).

¶23 In our case, that means that the *Thompson IV* division had de novo authority to determine whether the trial court violated the *Thompson III* mandate. As the Federal Circuit reasoned, it would "offend[] common sense . . . to suggest that we must defer to what a trial judge inferred about *our* intent in what *we* wrote." *Laitram*, 115 F.3d at 951.

¶24 It would seem similarly questionable for this court to tell a division of the court of appeals what another division meant when it remanded the case to the district court. A division of the court of appeals should have some elbow room in construing another division's mandate to promote the efficient administration of justice. *See Dish Network Corp. v. Arrowood Indem. Co.*, 772 F.3d 856, 864 (10th Cir. 2014) ("[T]he mandate rule . . . allows some flexibility in exceptional circumstances.") (citing *United States v. West*, 646 F.3d 745, 748 (10th Cir. 2011)); *see also Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1125 (10th Cir. 2003) (reasoning that an appellate court should only look to see "whether the court abused the limited discretion that [the] mandate left to it"). This is particularly significant given that the immediate question before us is whether the *Thompson IV* division misconstrued the mandate, not whether the district court did so. So, did the *Thompson IV* division reasonably construe the mandate at issue here?

¶25 Without meaning to disparage their efforts in this unusual case, we note that the *Thompson III* division offered somewhat conflicting directions. It first gave lodestar instructions and told the district court to make a "more specific determination" of reasonable costs and fees. *Thompson III*, slip op. at 11–13. This alone implies that the

district court would be required to go beyond the existing record, as the district court obviously considered the existing record deficient. But, the division then directed the district court to "review the existing record." *Id.* at 15. This could reasonably be read as the *Thompson III* court reassuring the district court that it need not go on a fishing expedition, rather than precluding consideration of any new evidence. On these peculiar facts, we can't say that the division's construction was an unreasonable one.

¶26 Deferring to the *Thompson IV* division here hardly reduces the mandate rule to nothing, as Petitioners suggest. We aren't giving the district court the power to disregard an appellate mandate. We simply conclude that one division reasonably reviewed the mandate of another in embracing the trial court's sensible resolution of a longstanding dispute.

### 4. Practical Problems

¶27 Finally, there would be at least two practical problems with reversing the court of appeals. First, after *Thompson III*, the district court requested supplemental briefing so that it could follow the court of appeals' mandate. Catlin then submitted the unredacted invoices. Disregarding these unredacted invoices would have required the district court to once more try to surmise reasonable fees and costs through invoices that it consistently found indecipherable. Reminding the district court about the lodestar methodology didn't make that fundamental impediment disappear. Thus, forcing the district court to ignore the unredacted invoices at the very least would have frustrated judicial economy, which is one of the reasons we have the mandate rule to begin with. *See Super Valu*, 906

11

P.2d at 79 (reasoning that the mandate rule "protects litigants from the expenditure of time and money involved in the reargument of settled issues").

¶28 Second, we would be adding an additional, unnecessary layer to the mandate rule. Specifically, one division of the court of appeals would be hampered in its ability to review another division's mandate. Imagine a situation the same as ours except that the same division that issued the mandate also reviewed the district court's decision to utilize the unredacted invoices. And further imagine that the court of appeals did what it did here and held that there was no violation of the mandate. It would be odd for us to tell the division what it "really" meant when it sent the case back to the district court. Reversing here would essentially mean that there are two standards of review: one for decisions reviewed by the same division and one for decisions reviewed by different divisions.

¶29 Because the court of appeals has discretion to reasonably review its own mandate, we affirm the judgment below.

### B. Prejudgment Interest

¶30 We first address the standard of review and then we explain why we conclude that Petitioners are entitled to prejudgment interest.

### 1. Standard of Review

¶31 Whether the court of appeals erred in its conclusion that no prejudgment interest attaches is a question of statutory construction that we review de novo. *See People v. Rediger*, 2018 CO 32, ¶ 18, 416 P.3d 893, 898.

12

## 2. Petitioners Are Entitled to Prejudgment Interest

¶32    In a garnishment proceeding, the answer of the garnishee and the traverse frame the issues to be decided by the court. *Rockey v. McCauley*, 366 P.2d 138, 139 (Colo. 1961). Catlin relies on *Clark* and *Sperry* for the proposition that Petitioners waived any claim to prejudgment interest. *See Sperry v. Field*, 205 P.3d 365, 369 n.2 (Colo. 2009) (reasoning that prejudgment interest must be requested in the complaint); *Clark v. Hicks*, 252 P.2d 1067, 1070 (Colo. 1953) ("Plaintiffs not having demanded interest prior to the entry of judgment, waived this demand which the statute provides must be made in the complaint."). But Catlin's reliance on *Clark* and *Sperry* is misplaced. *Sperry* dealt with section 13-21-101, C.R.S. (2018), while *Clark* construed that statute's predecessor, chapter 50, section 5 C.S.A. (1935). *See Sperry*, 205 P.3d at 366; *Clark*, 252 P.2d at 1070. While both statutes explicitly require prejudgment interest to be requested in the complaint,[2] section 5-12-102(1)(a), C.R.S. (2018), has no such requirement. Rather, the plain language of section 5-12-102(1)(a) states that "creditors shall receive interest . . . [w]hen money . . . has been wrongfully withheld." § 5-12-102(1)(a).[3] Even if Petitioners didn't request

---

[2] Both statutes contain nearly identical language: "In all actions brought to recover damages . . . occasioned by the tort of any other person . . . it is lawful for the plaintiff *in the complaint* to claim interest on the damages alleged from the date said suit is filed . . . ." *See* § 13-21-101(1) (emphasis added). The only difference is that the older statute states that it "shall be lawful," rather than "it is lawful." *See* ch. 50, § 5.

[3] The relevant language provides:

> (1) Except as provided in section 13-21-101, C.R.S., when there is no agreement as to the rate thereof, creditors shall receive interest as follows:

13

prejudgment interest until this proceeding, it would make no difference because section 5-12-102 doesn't contain a pleading requirement.

¶33     Thus, the relevant inquiry is whether section 5-12-102 applies to Catlin's debt. We conclude that it does.

¶34     "The purpose of section 5-12-102 is to discourage a person responsible for payment of a claim to stall and delay payment until judgment or settlement." *Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362, 364 (Colo. 1989). The provision "recognizes the time value of money" and "represents a legislative determination that persons suffer a loss when they are deprived of property to which they are legally entitled." *Id.*

¶35     As noted above, section 5-12-102 applies to money wrongfully withheld from a creditor. Thus, the applicability of section 5-12-102 turns on whether Petitioners are creditors within the meaning of the statute and whether money was wrongfully withheld from them.

---

> (a)When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs . . . .

§ 5-12-102(1)(a). The "except as provided in section 13-21-101" language contained in section 5-12-102(1) doesn't affect our analysis. That language simply underscores that section 5-12-102 doesn't apply to personal injury or tort actions, which are left to section 13-21-101. *See Old Republic Ins. Co. v. Ross*, 180 P.3d 427, 436 (Colo. 2008) ("[S]ection 5-12-102 . . . governs the award of prejudgment interest in non-personal-injury cases only.").

## A. Petitioners Are Creditors

¶36    "As a judgment creditor, a garnishor becomes a lien creditor upon service of the writ of garnishment on the garnishee." *Ryan v. Duffield*, 899 P.2d 378, 380 (Colo. App. 1995) (citing *Bowlen v. Fed. Deposit Ins. Corp.*, 815 P.2d 1013, 1015 (Colo. App. 1991)). This results from the simple fact that a "lien creditor" is "[a] creditor that has acquired a lien on the property involved by attachment, levy, or the like," and the operative acts, "attachment, levy, or the like," don't occur until the writ of garnishment is actually served. *See* § 4-9-102(a)(52), C.R.S. (2018) (definition of lien creditor). Accordingly, Petitioners were creditors here. A contested garnishment proceeding results in a judgment in favor of the judgment debtor and against the garnishee for the use of the judgment creditor. C.R.C.P. 103, § 4(f)(1). We perceive no basis to treat a garnishee against whom a judgment is entered any differently from a defendant against whom a judgment is entered in a non-personal-injury action, as both are obligated to make a payment in favor of the judgment creditor.

## B. Catlin Wrongfully Withheld the Insurance Proceeds

¶37    "Wrongful withholding" for purposes of section 5-12-102 occurs at the time a plaintiff's injury is measured or, in a contract action, at the time of the breach. *Goodyear Tire & Rubber Co. v. Holmes*, 193 P.3d 821, 826–27 (Colo. 2008). Either a formal demand or circumstances evincing a reasonable expectation of payment render nonpayment "wrongful." *Paratransit Risk Retention Grp. Ins. Co. v. Kamins*, 160 P.3d 307, 320 (Colo. App. 2007). For a withholding of payment to be wrongful, however, the withholding need not be tortious or in bad faith. *Peterman v. State Farm Mut. Auto. Ins. Co.*, 8 P.3d 549,

15

551 (Colo. App. 2000), *overruled in part on other grounds by USAA v. Parker*, 200 P.3d 350, 358 n.11 (Colo. 2009). Rather, "a wrongful withholding only requires the failure to pay or deliver money or property when there is an obligation to do so." *Id.*

¶38 Catlin's withholding of a portion of the money due to Petitioners was "wrongful," as that term has been defined in the court of appeals cases cited above. The money was due on the date Petitioners demanded it, and Catlin has delayed paying this money for almost a decade.

¶39 Applying similar reasoning, we long ago (albeit in a case that preceded our current statute) ruled that a garnishor was entitled to prejudgment interest on a garnishment amount based on the garnishee's unreasonable delay in paying the sums due. *See Colo. Nat'l Bank of Denver v. Simpson*, 121 P.2d 663, 666 (Colo. 1942). More recent cases applying statutes similar to section 5-12-102 have likewise authorized an award of prejudgment interest against a garnishee who wrongfully delayed paying the garnishment amount. *See, e.g., McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 633–34 (6th Cir. 2000) (applying Kentucky law); *Nw. Airlines, Inc. v. Prof'l Aircraft Line Serv.*, No. 11-368 (JRT/TNL), 2013 WL 6275013, at *6–7 (D. Minn. Dec. 4, 2013) (applying Minnesota law), *aff'd*, 776 F.3d 575 (8th Cir. 2015); *see also Whitney v. Faulkner*, 95 P.3d 270, 274–75 (Utah 2004) (holding that a court may "award prejudgment interest when a garnishee becomes unduly partisan, or otherwise obstructs the [garnishment] process"). As these cases demonstrate, prejudgment interest can properly be used to hold Catlin responsible for its delay. Moreover, this use is fully consistent with both the text and purposes of section 5-12-102.

## C. The Division Below

¶40 In reaching this conclusion, we reject the division's view that an award of prejudgment interest isn't appropriate because a garnishment action doesn't result in damages to the garnishor and section 5-12-102 applies only in the context of a claim for compensatory damages. *See Thompson IV*, ¶ 31. Nothing in the text of section 5-12-102 so limits its reach.

¶41 We are also unpersuaded by the division's apparent view that section 5-12-102 applies only to actions involving contracts or property damage. *See id.* at ¶ 30. Again, the statute contains no such limitation. Rather, it refers to "money . . . [that] has been wrongfully withheld." § 5-12-102(1)(a).

¶42 To the extent that the division majority relies on our decision in *Beren v. Beren*, 2015 CO 29, ¶ 45, 349 P.3d 233, 246, it reads too much into that case. To be sure, in *Beren*, we noted that section 5-12-102 codified the doctrine of moratory interest in contract and property damage cases and that, as a precondition to a wrongful withholding, a party must have 'acted wrongfully in the legal sense" (e.g., by breaching a contract). *Id.* Notably, however, we cited to *Farmers Reservoir & Irrigation Co. v. City of Golden*, 113 P.3d 119, 133 (Colo. 2005). There, although we stated that section 5-12-102 codified the doctrine of moratory interest in contract and property cases, we did so in the context of distinguishing the kinds of cases covered by section 5-12-102 from personal injury actions, in which prejudgment interest is governed by section 13-21-101. *Id.* Our discussions in *Beren* and *Farmers Reservoir* don't limit section 5-12-102 to breach of contract and property damage cases. Rather, section 5-12-102 governs prejudgment

17

interest in all non-personal-injury cases, as we have previously so stated. *See Old Republic*, 180 P.3d at 436 (noting that section 5-12-102 governs the award of prejudgment interest in "non-personal-injury cases only").

## D. Catlin's Arguments

¶43    We are likewise unconvinced by Catlin's arguments that (1) C.R.C.P. 103, section (4)(f)(1) forecloses an award of prejudgment interest in a garnishment proceeding and (2) awarding prejudgment interest here would result in an award of double interest because interest was already included in the garnishment amount.

¶44    As to Catlin's first argument, although C.R.C.P. 103, section (4)(f)(1) states, "In no event shall any judgment against the garnishee be more than the total amount due and owing on the judgment," this section merely restates the settled principle that "a garnishor cannot acquire more rights in a judgment than the judgment creditor had." *See Law Offices of Andrew L. Quiat, P.C. v. Ellithorpe*, 917 P.2d 300, 304 (Colo. App. 1995). This section doesn't override section 5-12-102 or otherwise provide a garnishee with a means of shielding itself from responsibility for its own wrongful conduct.

¶45    And no double interest would result from an award of prejudgment interest here. The garnishment amount included the pre- and post-judgment interest from the underlying arbitrations. The prejudgment interest that we're concerned with, in contrast, is interest accruing on the unpaid garnishment amount from the date of the garnishment until the date the garnishment judgment enters. Because interest on the arbitration awards ceased running once the garnishment amount was fixed, the prejudgment

interest at issue covers only Catlin's delay in paying the full amount due *after* the garnishment amount was fixed.

¶46 Therefore, Petitioners are entitled to recover prejudgment interest and we reverse the court of appeals on this issue.

## III. Conclusion

¶47 After ten years of attempts at calculating reasonable fees and costs, we conclude that the *Thompson IV* division reasonably construed its own mandate. We further conclude that Petitioners are entitled to prejudgment interest.

¶48 Thus, as to the first issue, we affirm the court of appeals; as to the second, we reverse and remand for further proceedings consistent with this opinion.

**JUSTICE GABRIEL** concurs in part and dissents in part, and **JUSTICE BOATRIGHT** and **JUSTICE HART** join in the partial concurrence and partial dissent.

JUSTICE GABRIEL, concurring in part and dissenting in part.

¶49    I fully agree with the majority's conclusion that Petitioners are entitled to prejudgment interest in this case. I cannot agree, however, with the portion of the majority's ruling that condones what I believe to be the district court's violation of the so-called "mandate rule," which required the district court to comply with a prior division's mandate.

¶50    Because I believe that the majority's opinion is inconsistent with and unnecessarily diminishes the mandate rule, I respectfully concur in part and dissent in part.

## I.  Factual Background

¶51    The majority has clearly and succinctly set forth the pertinent facts and procedural history. For purposes of my analysis, I would only emphasize that, for almost a decade, Catlin chose not to produce unredacted copies of its attorney fee invoices, notwithstanding the fact that it was seeking to deduct its attorney fees from the amounts due to Petitioners and bore the burden of proving the amount of that deduction. Then, after three appeals and a prior award limiting its deduction to $320,000, Catlin suddenly chose to produce the unredacted invoices, claiming a deduction of $545,136.27 in attorney fees—a $225,136.27 increase over the amount previously awarded. Although the district court ultimately reduced the amount of the allowable deduction to $452,107.15 by affirming the division below, the majority has effectively rewarded Catlin for its delay tactics with a $132,107.15 increase in its deduction.

¶52    For the reasons discussed below, I do not agree that such a windfall is supported by applicable law, nor does it result in justice for Petitioners.

1

## II. Analysis

¶53 An appellate court's pronouncement on an issue presented to it, as well as those rulings that are logically necessary to the appellate court's decision, become law of the case. *People v. Roybal*, 672 P.2d 1003, 1005 (Colo. 1983); *Hardesty v. Pino*, 222 P.3d 336, 340 (Colo. App. 2009). Under the mandate rule that is embodied in the law of the case doctrine, on remand, a district court must adhere to an appellate court's commands unless the appellate court's ruling is no longer sound due to changed conditions, factual errors in the previous ruling, intervening changes in the law, or manifest injustice resulting from the original ruling. *People v. Allen*, 885 P.2d 207, 212 (Colo. 1994).

¶54 The mandate rule serves the dual purposes of "protecting against the reargument of settled issues and assuring the adherence of lower courts to the decisions of higher courts." *Roybal*, 672 P.2d at 1005.

¶55 Here, the mandate in *Thompson v. United Securities Alliance, Inc.* (*Thompson III*), No. 13CA2037, slip op. at 15 (Colo. App. Oct. 16, 2014) provided:

> The order is reversed and remanded with instructions to calculate the reasonable costs and fees that Catlin may deduct from the policy limit. In doing so, *the court is directed to review the existing record*, and *from this record*, calculate the amount of expenses that Catlin reasonably incurred in each of the [two underlying] arbitrations; and to identify any factors and calculations used in making this calculation.

(Emphasis added.)

¶56 Unlike the majority and the division majority below, I see no room for interpretative disagreement regarding this mandate. It plainly and unambiguously directed the district court to make additional findings *from the existing record* because, as Judge Webb correctly observed in his partial dissent below, "[T]he problem in

2

*Thompson III* was insufficient explanation, not a lack of evidence." *Thompson v. United Sec.*

*All., Inc.* (*Thompson IV*), 2016 COA 128, ¶ 48, __ P.3d __ (Webb, J., concurring in part and

dissenting in part).

¶57    Moreover, this mandate made perfect sense.  After almost a decade of litigation,

the division made clear that the district court was to conduct no more hearings and

receive no further evidence.  This left the district court with two options: (1) allow a

deduction of whatever fees it could discern from the previously submitted redacted

invoices or (2) explain and make findings as to why the fees incurred by Petitioners could

provide a fair measure of the fees incurred by Catlin.

¶58    Nothing in the *Thompson III* mandate, however, authorized Catlin to submit or the

district court to consider the unredacted invoices that Catlin had withheld for the prior

decade.  And, as myriad published decisions of divisions of our court of appeals make

clear, when a division intends to authorize a district court to consider additional evidence

on remand, it says so clearly and directly.  *See, e.g.*, *Minshall v. Johnston*, 2018 COA 44,

¶ 31, 417 P.3d 957, 962 (directing that, on remand, the district court, in its discretion, may

hold a hearing or require the plaintiffs to provide additional information in writing); *In*

*re Becker*, 2017 COA 114, ¶ 31, 405 P.3d 499, 504 (remanding for further findings "based

on the existing record and any additional evidence received within the court's

discretion"); *In re Marriage of Corak*, 2014 COA 147, ¶ 21, 412 P.3d 642, 646 (directing that,

on remand, it is within the trial court's discretion to receive additional evidence or to rely

on the record of the previous evidentiary hearing); *Hoff v. Indus. Claim Appeals Office*, 2014

COA 137M, ¶ 45, 383 P.3d 50, 58–59 (directing that, on remand, the administrative law

3

judge, in his discretion, may conduct an additional hearing and allow the submission of additional evidence), *rev'd on other grounds*, 2016 CO 53, 375 P.3d 1214; *In re Estate of Beren*, 2012 COA 203M, ¶ 156, 412 P.3d 487, 513 (directing that, on remand, the probate court may, in its discretion, take additional evidence), *aff'd in part, rev'd in part on other grounds,* 2015 CO 29, 349 P.3d 233; *Jackson v. Unocal Corp.*, 231 P.3d 12, 16 (Colo. App. 2009) (directing that, on remand, the trial court may, in its discretion, take additional evidence to the extent necessary because of the standards announced in the division's opinion), *rev'd on other grounds*, 262 P.3d 874 (Colo. 2011); *In re Marriage of Newell*, 192 P.3d 529, 536 (Colo. App. 2008) (directing that, on remand, the magistrate may, in her discretion, schedule additional hearings if additional evidence is needed); *In re Marriage of Amich*, 192 P.3d 422, 427 (Colo. App. 2007) (directing that, on remand, the district court, in its discretion, may permit the parties to present additional evidence); *see also People in Interest of M.D.*, 2014 COA 121, ¶ 18, 338 P.3d 1120, 1123–24 (noting the distinction between a remand with specific directions, which affords the trial court no discretion except to comply, and a general remand, which is a remand for further proceedings consistent with the appellate court's opinion).

¶59 Here, the *Thompson III* mandate provided no discretion to the district court to consider additional evidence. Indeed, it plainly said just the opposite. For these reasons, as well as those that Judge Webb set forth in his separate opinion below, *see Thompson IV,* ¶¶ 39–55 (Webb, J., concurring in part and dissenting in part), I believe that the district court departed from the *Thompson III* division's mandate, and I would again direct that court to reconsider the attorney fee issue based solely on the invoices and other

4

information in the record at the time the mandate was issued. To hold otherwise on the facts of this case diminishes the mandate rule, and, as Judge Webb pointed out, produces an unjust result because it allows Catlin to escape the strategic decision that it made to rest its fees claim on redacted invoices while at the same time shifting the burden of its altered strategy to Petitioners. *Id.* at ¶ 54.

### III. Conclusion

¶60 In perceiving no district court violation of the *Thompson III* mandate and allowing a subsequent division to reinterpret that mandate after the fact, the majority rewards Catlin for its almost decade-long delay in providing the evidence necessary to support its claimed fee deduction and in paying Petitioners the full amount due to them. Unlike the majority, I believe that the *Thompson III* mandate was clear and unambiguous and foreclosed the district court from considering evidence outside the record that existed at the time of the mandate. Moreover, I perceive no basis to allow one division to reinterpret a prior division's clear and unambiguous mandate and thereby uphold a district court's violation of that mandate. I fear that such a ruling unnecessarily diminishes the mandate rule by introducing new grounds to question when—or even if—a district court must follow an appellate court's mandate.

¶61 For these reasons, I would reverse the judgment of the division below and remand this case for a determination, based solely on the record that existed at the time of the *Thompson III* mandate, of the amount of attorney fees to be deducted. For the reasons set forth by the majority, I would then award prejudgment interest on the remaining

5

amounts due to Petitioners from the date of the garnishment to the date the garnishment judgment is entered.

¶62    Accordingly, I respectfully concur in part and dissent in part.

I am authorized to state that JUSTICE BOATRIGHT and JUSTICE HART join in this concurrence in part and dissent in part.