23CA1666 McGreevy v Jenkins 04-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1666
Arapahoe County District Court No. 18CV32241
Honorable Elizabeth Beebe Volz, Judge

---

William McGreevy and Colleen McGreevy,

Plaintiffs-Appellees and Cross-Appellants,

v.

Justin Tobias Jenkins,

Defendant-Appellant and Cross-Appellee.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE BROWN
J. Jones and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

---

The Law Offices of Peter R. Bornstein, Peter R. Bornstein, Greenwood Village, Colorado, for Plaintiffs-Appellees and Cross-Appellants

Gersh & Thomaidis, LLC, James N. Thomaidis, Denver, Colorado, for Defendant-Appellant and Cross-Appellee

¶ 1    This is the second appeal in a dispute between Justin Tobias Jenkins; his former wife, Mary E. Jenkins; and his former parents-in-law, Colleen and William McGreevy.  As relevant here, the district court determined that Justin[1] breached a joint venture agreement with the McGreevys to purchase, remodel, and sell a property and that the McGreevys were entitled to damages.  The McGreevys appealed, and a division of this court affirmed the judgment in part, reversed it in part, and remanded the case with specific instructions for the district court to make additional findings and conclusions on certain claims and categories of damages.  *See McGreevy v. Jenkins*, (Colo. App. No. 21CA1249, Feb. 9, 2023) (not published pursuant to C.A.R. 35(e)) (*McGreevy I*).

¶ 2    On remand, the court reversed its original determination that a joint venture existed and instead concluded that the parties had entered into an oral contract, which rendered most of the *McGreevy I* division's remand instructions inapplicable.  Justin appeals, attempting to challenge parts of both the original and amended

---

[1] Because the parties share last names, we refer to them individually by first names and mean no disrespect in doing so.

judgments,[2] and the McGreevys cross-appeal, principally arguing that the district court exceeded the mandate from *McGreevy I*. Because we agree with the McGreevys that the district court exceeded the mandate, we reverse almost all of the amended judgment,[3] reinstate the original judgment except to the extent it was reversed by *McGreevy I*, and again remand the case to the district court to comply with the mandate from *McGreevy I*.

## I.     Background and Procedural History

### A.     The Joint Venture and the Divorce

¶ 3      The division in *McGreevy I* detailed the underlying facts, so we only briefly reiterate those that are relevant to our disposition of this appeal.  *See McGreevy I*, No. 21CA1249, slip op. at ¶¶ 2-19.

¶ 4      In 2011, the McGreevys and the Jenkinses began working together on a fix-and-flip project in Castle Rock, Colorado.  The Jenkinses purchased the property in their names for $246,000 —

---

[2] During oral argument, Justin's attorney said that Justin was not attempting to challenge portions of the original judgment that were not affected by the district court's amended judgment, but his briefs clearly contradict this, as detailed below.

[3] We leave undisturbed the part of the amended judgment denying the McGreevys attorney fees under section 13-17-102, C.R.S. 2024, because they did not appeal that issue.

they made a down payment of $61,500 and obtained a mortgage loan of $184,500. The McGreevys took out a $157,000 home equity line of credit (HELOC) on their personal residence to provide the down payment, pay off some of Justin's debt so he could get a better interest rate on the mortgage, and fund the renovation of the house. Colleen McGreevy testified that, while the renovation was in progress, the McGreevys also used funds from the HELOC to make the monthly mortgage payments for the Jenkinses. Colleen said they used all the HELOC funds and had to put another $10,000 or more into the project.

¶ 5 After the renovation was completed, the Jenkinses rented out the house under a five-year lease for $2,500 a month and used the rental income to pay the monthly mortgage payments and the interest on the McGreevys' HELOC. The renter later purchased the house for $480,000, and the net proceeds from the sale — after paying closing costs and the Jenkinses' mortgage — were $299,223.76. By the time the house was sold, Justin and Mary were in the midst of a divorce and disagreed about how to distribute the sale proceeds.

¶ 6    Eventually, the domestic relations court found that Mary did not present sufficient evidence to establish that the McGreevys had an interest in the property or that the Jenkinses had to repay the McGreevys for their financial assistance. The domestic relations court found that the McGreevys' financial assistance was a gift to the marriage and treated the proceeds from the sale of the home as marital property. Although the domestic relations court disproportionately allocated the sale proceeds between Mary and Justin — $249,763.16 to Mary and $49,236.84 to Justin — it also allocated the marital home, worth $207,870, to Justin and otherwise equitably divided the marital estate.

## B.    The Underlying Lawsuit

¶ 7    The McGreevys filed a civil suit against Justin, asserting claims for civil theft, breach of fiduciary duty, breach of a joint venture agreement, and unjust enrichment. Justin asserted claims against the McGreevys (as counterclaim defendants) and Mary (as a third-party defendant) for breach of fiduciary duty, breach of contract, and civil conspiracy.

¶ 8    The district court conducted a six-day bench trial and issued a written order on May 14, 2021. The court found "that there is

4

ample evidence from which it can conclude that there was a joint venture agreement between the McGreevys and the Jenkins[es] to purchase and remodel a home for resale, i.e. fix-n-flip, and to share equally between the two couples any losses or profits from this venture." The court also found that no contract existed because "there was no meeting of the minds or agreement on an essential element related to complete repayment to the McGreevys for whatever amount they decided to contribute to the project." It rejected the McGreevys' claims for unjust enrichment and civil theft and implicitly dismissed their claim for breach of fiduciary duty as moot because that claim sought the same economic damages as the joint venture claim. It also rejected Justin's civil conspiracy claim and implicitly rejected Justin's breach of fiduciary duty claim.

¶ 9     As for damages, the court found that the McGreevys should have recovered half of the sale proceeds, totaling $149,611.88. The court allocated to the McGreevys $31,613.14 that had been deposited into the registry of the court after the divorce, leaving a balance due to the McGreevys of $117,998.74. It entered judgment against Justin for half that amount — $58,999.37 — finding that Mary would be responsible for the other half but noting that the

McGreevys had not asserted any claims against her. On August 24, 2021, the court entered default judgment against Mary and awarded Justin a sum certain in damages, resolving all remaining claims.[4]

## C. The First Appeal

¶ 10 On August 20, 2021, the McGreevys filed an appeal with this court. They contended that the district court erred by (1) failing to assess damages for return of their contribution to the joint venture; (2) rejecting their civil theft claim; (3) declining to resolve their breach of fiduciary duty claim; (4) failing to consider their request for noneconomic damages; (5) denying their motion to add a claim for exemplary damages; (6) declining to award prejudgment interest; (7) declining to award them attorney fees for the breach of fiduciary duty claim; and (8) declining to award them attorney fees under

---

[4] The district court also entered an order on September 24, 2021, adding awards of attorney fees and costs against Mary, and a "Judgment and Certification under Rule 54(b)" purporting to enter a "final judgment" on October 8, 2021. The *McGreevy I* division concluded that all claims were resolved and a final judgment was entered on August 24, 2021, when the court entered default judgment against Mary. *See McGreevy v. Jenkins*, (Colo. App. No. 21CA1249, Feb. 9, 2023) (not published pursuant to C.A.R. 35(e)).

section 13-17-102, C.R.S. 2024.  *McGreevy I*, No. 21CA1249, slip op. at ¶ 18.

¶ 11    Justin moved to dismiss the appeal, arguing that this court lacked jurisdiction because the McGreevys appealed prematurely — before all the claims were resolved — and because the district court had not certified the judgment as final under C.R.C.P. 54(b).  *Id.* at ¶¶ 17-18.  A motions division of this court denied the motion to dismiss and Justin's subsequent motion to reconsider the order denying the motion.  *Id.* at ¶ 18.  Justin also filed a notice of cross-appeal on November 26, but the motions division dismissed it for lack of jurisdiction because it was filed more than forty-nine days after the district court entered its final judgment.[5]  *See* C.A.R.

---

[5] C.A.R. 4(a)(1) provides, with exceptions not relevant here, that a notice of appeal must be filed "within 49 days after entry of the judgment, decree, or order being appealed."  C.A.R. 4(a)(2) provides that, "[i]f one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this section (a), whichever period ends later."  Fourteen days after the McGreevys filed their notice of appeal was September 3, 2021.  Forty-nine days from the district court's August 24, 2021, final judgment was October 12, 2021.  The motions division even gave Justin the benefit of calculating his appeal deadline from the court's September 24, 2021, order, but even then, Justin's notice of cross-appeal was due no later than November 12, 2021.

4(a)(1)-(2); *People in Interest of M.R.M.*, 2021 COA 22, ¶ 42 ("Unless a notice of appeal is timely filed, the court of appeals lacks jurisdiction to hear the appeal.") (citation omitted).

¶ 12     Justin re-raised his jurisdictional challenge in his answer brief, arguing that the district court was required to certify its judgment as final under C.R.C.P. 54(b) before the McGreevys could appeal. *McGreevy I*, No. 21CA1249, slip op. at ¶ 18. The merits division rejected that challenge, explaining that all claims were resolved when the district court entered default judgment against Mary in August 2021, which rendered the judgment final without the need for a C.R.C.P. 54(b) certification. *Id.* at ¶¶ 21-24. Although the division recognized that the McGreevys' appeal had been filed prematurely, it concluded that the district court's entry of default judgment against Mary cured any jurisdictional defect, and that Justin had failed to show how he was prejudiced by the premature filing. *Id.* at ¶¶ 25-26.

¶ 13     On the merits, the division affirmed the district court's denial of the McGreevys' civil theft claim and their pretrial motion to amend their complaint to seek exemplary damages. *Id.* at ¶¶ 35, 56. The division also affirmed the court's joint venture liability

8

determination. *Id.* at ¶ 78. However, the division concluded that the court erred by (1) failing to enter findings and conclusions as to whether the McGreevys were entitled to a return of their contribution to the joint venture under partnership law; (2) effectively dismissing the McGreevys' breach of fiduciary duty claim as moot because that claim sought the same economic damages as their breach of joint venture claim; (3) failing to explain why it rejected the McGreevys' claims for noneconomic damages and attorney fees that might be available if the McGreevys were to establish their breach of fiduciary duty claim; (4) denying the McGreevys' request for prejudgment interest; and (5) failing to explain why it denied the McGreevys' request for attorney fees under section 13-17-102. *See id.* at ¶¶ 27, 42, 50-55, 61, 66, 72.

¶ 14    Consequently, the division reversed the judgment in part and remanded for the district court to (1) enter findings and conclusions as to "whether the McGreevys are entitled under partnership law to a return of their contributions to the joint venture" and adjust the damage award accordingly; (2) enter findings and conclusions as to whether the McGreevys proved their claim for breach of fiduciary duty and, if so, "consider any additional damages, including

9

noneconomic damages and attorney fees" they are entitled to recover for that claim; (3) award prejudgment interest "once the court determines the amount of the judgment"; and (4) enter findings and conclusions "explaining its decision on the McGreevys' request for fees" under section 13-17-102. *Id.* at ¶ 77.

### D.    Proceedings on Remand

¶ 15    On remand, the district court held a status conference and ordered the parties to brief the remand issues. It did not receive additional evidence. In an amended judgment, the court reversed its prior joint venture liability determination and instead concluded that the parties had entered into an oral contract.[6] And because the court determined that no joint venture existed, it reasoned "that further analysis of the application of partnership law to the return of contributions is unnecessary" and that "the [b]reach of [f]iduciary [d]uty claim is inapplicable."

¶ 16    The court did enter further findings, as directed by the *McGreevy I* division, on the McGreevys' request for attorney fees

---

[6] We note that the McGreevys did not assert a claim against Justin for breach of contract. Justin asserted a breach of contract claim against the McGreevys, but the district court denied it on the basis that there was no meeting of the minds and therefore no contract.

under section 13-17-102, concluding they were not entitled to fees under that statute because Justin's counterclaims were not brought in bad faith and were not frivolous, groundless, or vexatious. The court also separately determined the amount of prejudgment interest. This appeal and cross-appeal followed.

## II. The McGreevys' Contentions

¶ 17 The McGreevys contend that the district court erred by (1) violating the *McGreevy I* mandate by reversing its original judgment and not otherwise following the remand instructions; (2) concluding that an oral contract existed because that factual finding is unsupported by the record; (3) failing to enter findings and conclusions on whether the McGreevys proved their breach of fiduciary duty claim; and (4) failing to adjust the damages award as directed in the mandate. We conclude that the court violated the *McGreevy I* mandate by reversing its original joint venture liability determination. As a result, we also conclude that the court erred by failing to enter findings and conclusions on the McGreevys' breach of fiduciary duty claim and any damages associated with that claim.

### A.   Compliance with the Mandate

#### 1.   Applicable Law and Standard of Review

¶ 18   "Under the mandate rule, '[c]onclusions of an appellate court on issues presented to it as well as rulings logically necessary to sustain such conclusions become the law of the case,' which the trial court must follow on remand." *Owners Ins. Co. v. Dakota Station II Condo. Ass'n*, 2021 COA 114, ¶ 24 (citation omitted).  If "an appellate court remands a case with specific directions . . . to pursue a prescribed course, a trial court has no discretion except to comply with the instructions." *People in Interest of M.D.*, 2014 COA 121, ¶ 18.

¶ 19   We review de novo whether a trial court followed a mandate from the court of appeals.  *Thompson v. Catlin Ins. Co. (UK) Ltd.*, 2018 CO 95, ¶¶ 20-22.

#### 2.   The District Court Failed to Follow the Mandate

¶ 20   The McGreevys contend that the district court violated the *McGreevy I* mandate by reversing its previous joint venture liability determination.  We agree.

¶ 21   In its original judgment, the district court found the signature features of a joint venture: the parties agreed to jointly invest in a

property; cooperated in the renovation and sale of the property; and were to "share equally between the two couples any losses or profits from this venture," with each couple taking "the chance that there would be losses and they would share equally in these losses or there would be profits and each couple would share equally in the profits." *See Scott R. Larson, P.C. v. Grinnan*, 2017 COA 85, ¶ 45 ("A joint venture exists when there is: (1) a joint interest in [the] property; (2) an express or implied agreement to share in profits or losses of the venture; and (3) actions and conduct showing joint cooperation in the venture.") (citation omitted); *Colo. Performance Corp. v. Mariposa Assocs.*, 754 P.2d 401, 405 (Colo. App. 1987) (explaining that a "chief characteristic of a joint adventure is a *joint* and not a *several* profit" (quoting *Fedderson v. Goode*, 145 P.2d 981, 985 (Colo. 1944))); *Batterman v. Wells Fargo Ag Credit Corp.*, 802 P.2d 1112, 1117 (Colo. App. 1990) (The element of joint and not several profit sharing "is not present if one of the parties to the alleged joint venture receives a fixed sum, irrespective of the venture's profits or losses, or if one of the parties could" enjoy individual profit while the other enjoys individual loss.) (citation omitted). Thus, the court found "ample evidence from which it can

conclude that there was a joint venture agreement" to "fix-n-flip" the Castle Rock property and awarded the McGreevys damages for Justin's breach of that joint venture.

¶ 22    But the court did not award the McGreevys a return of their initial contribution to the joint venture. The *McGreevy I* division explained that "after finding that the parties had entered into a joint venture relationship, the court was required to direct a return of each partner's contributions in the winding up of that joint venture, unless the court found that the partners had agreed there would be no return of their contributions." *McGreevy I*, No. 21CA1249, slip op. at ¶ 31; *see* §§ 7-64-103(1), -401(1)(a), -807(2), C.R.S. 2024; *see also Turkey Creek, LLC v. Rosania*, 953 P.2d 1306, 1310 (Colo. App. 1998) ("The rights of a party to a joint venture agreement are subject to any agreements between the parties of the venture."). The division was perplexed by the court's seemingly contrary findings that "[t]here was no provision that the Jenkins[es] would first recoup all of their mortgage payments and there can be no provision that the McGreevys recoup all of their expenditures before these profits are calculated," that the parties had no meeting of the minds "related to complete repayment of the McGreevys for

14

whatever amount they decided to contribute," and that the parties agreed "to share equally in any losses or profits, without any consideration of first paying back expenses."

¶ 23    Unable to discern the basis for the court's decision not to award the McGreevys a return of their contribution, the *McGreevy I* division reversed the original judgment on the joint venture claim *only as it related to the court's computation of damages.* It expressly affirmed the judgment "[i]n all other respects," which included affirming the court's determination that the parties had entered into a joint venture and that Justin was liable to the McGreevys for breaching it. *McGreevy I*, No. 21CA1249, slip op. at ¶¶ 77-78. The division directed the court only to enter additional findings and conclusions on whether the McGreevys "are entitled under partnership law to a return of their contributions to the joint venture" and to adjust the damage award accordingly. *Id.* at ¶ 77.

¶ 24    But on remand, the district court reversed course entirely, finding that no joint venture agreement existed and that an oral contract existed instead. And because it found no joint venture agreement existed, it saw no need to comply with the *McGreevy I* division's instructions to apply partnership law and recalculate

damages on the breach of joint venture claim. The court's amended judgment effectively unwound the *McGreevy I* division's decision to affirm the joint venture liability determination. The court had no discretion to revisit the parts of the judgment the *McGreevy I* division affirmed or to ignore the division's specific remand instructions. *See Owners Ins. Co.,* ¶ 24; *M.D.,* ¶ 18. By doing both, the court violated the mandate.

¶ 25 We reverse the amended judgment to the extent it determined that no joint venture existed or found that an oral contract existed. We again remand the case to the district court to comply with the *McGreevy I* mandate.[7]

### B. The Breach of Fiduciary Duty Claim

¶ 26 The McGreevys contend that the district court failed to enter findings and conclusions on whether they proved their breach of

---

[7] We note that the district court's amended judgment said that "if a [j]oint [v]enture did exist and the [c]ourt considered reimbursement to the parties for the 'capital contributions' such consideration would necessarily include return of the mortgage payments made by the Jenkins[es]." To the extent that the Jenkinses made mortgage payments that were not covered by the rental income, as Justin testified, or drawn from the McGreevys' HELOC, as Colleen testified, we agree that the court should consider those unreimbursed contributions in recalculating damages.

fiduciary duty claim as required by the *McGreevy I* mandate. Again, we agree.

¶ 27     In the original judgment, the court effectively dismissed the McGreevys' breach of fiduciary duty claim as moot because it sought the same economic damages as the joint venture claim. Recognizing that the McGreevys might be entitled to noneconomic damages and attorney fees if they succeeded on the breach of fiduciary duty claim, the *McGreevy I* division determined that the claim was not moot and directed the court on remand to enter findings and conclusions on whether the McGreevys proved the claim and, if so, to consider whether noneconomic damages and attorney fees should also be awarded. *McGreevy I*, No. 21CA1249, slip op. at ¶¶ 48, 77.

¶ 28     On remand, the court reasoned that the breach of fiduciary duty claim was "based on whether or not there was a [j]oint [v]enture" because parties to a joint venture owe one another a fiduciary duty. *See Hooper v. Yoder*, 737 P.2d 852, 857 n.4 (Colo. 1987) ("The substantive law of partnership applies to joint ventures as well as partnerships," and "[p]artners as well as joint venturers are fiduciaries with respect to each other and owe to each other the

17

highest duty of loyalty."). Because the court reversed its prior finding that a joint venture existed, it determined that the McGreevys' breach of fiduciary duty claim "is barred" — presumably because, in the absence of a joint venture, Justin would not owe the McGreevys a fiduciary duty.

¶ 29    However, we have reversed the amended judgment to the extent it found that a joint venture did not exist and have reinstated the court's original determination that a joint venture existed, which means that the McGreevys and Justin owed each other a fiduciary duty. *See id.* Consequently, we again remand to the district court to determine, as the *McGreevy I* division instructed, whether the McGreevys proved a breach of that duty and whether they are entitled to noneconomic damages and attorney fees as a result. *McGreevy I*, No. 21CA1249, slip op. at ¶ 77.

### III.    Justin's Contentions

¶ 30    Justin contends that the district court erred in entering the *original judgment* by (1) determining that the parties entered into a joint venture agreement; (2) creating a "new and different" joint venture agreement than the one the McGreevys alleged in their complaint; and (3) computing damages inconsistent with the court's

18

own findings.[8] He also contends that the court erred in entering the *amended judgment* by (1) determining that the parties entered into an oral contract and (2) adopting essentially the same computation of damages for the oral contract as it had for the joint venture agreement.

¶ 31    To the extent that Justin attempts to appeal the district court's original judgment, we decline to address his arguments because they were either not raised in a timely cross-appeal in *McGreevy I* or were already rejected by the *McGreevy I* division. *See M.R.M.*, ¶ 42; *Youngs v. Indus. Claim Appeals Off.*, 2012 COA 85M, ¶ 49 ("Once an issue has been raised and decided, it becomes the law of the case."). And because we have reversed the amended judgment to the extent it found an oral contract, Justin's arguments that the court erred by finding a contract and adopting its prior damage computation are moot. *See People in Interest of C.G.*, 2015 COA 106, ¶ 12 (explaining that "[a]n issue is moot when

---

[8] Justin also said he was challenging the district court's entry of default judgment against Mary, but he failed to develop that argument, so we do not address it. *See Taylor v. Taylor*, 2016 COA 100, ¶ 13 (declining to address a contention stated in one paragraph in a conclusory nature that was unsupported by any substantial argument).

the relief sought, if granted, would have no practical effect on an existing controversy" and that courts ordinarily refrain from addressing a moot issue on the merits).

## IV. Appellate Attorney Fees and Costs

¶ 32  The McGreevys request appellate attorney fees under C.A.R. 38(a), which provides for attorney fees as a sanction for failure to comply with the appellate court's orders or rules, and C.A.R. 38(b), which provides for attorney fees as damages for frivolous appeals. We decline to award attorney fees under C.A.R. 38(a) because we perceive no sanctionable violation of this court's orders or rules. But we conclude that the McGreevys are entitled under C.A.R. 38(b) and section 13-17-102(4) to recover appellate attorney fees incurred in connection with Justin's attempt to relitigate claims relating to the original judgment and first appeal.

¶ 33  An appeal may be frivolous as filed or as argued. *Calvert v. Mayberry*, 2019 CO 23, ¶ 45. An appeal "is frivolous as filed when there are no legitimately appealable issues because the judgment below 'was so plainly correct and the legal authority contrary to the appellant's position so clear.'" *Id.* (quoting *Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006)). If there are

20

legitimately appealable issues, then "an appeal may still be frivolous as argued if the appellant 'fail[s] to set forth . . . a coherent assertion of error, supported by legal authority.'" *Id.* (quoting *Castillo*, 148 P.3d at 292).

¶ 34　The arguments that Justin raises relative to the district court's amended judgment and the new finding that a contract existed are not frivolous even though we did not reach their merits. However, Justin's continued efforts to relitigate issues related to the original judgment that were either rejected by the *McGreevy I* division or not timely appealed in the first instance are frivolous and waste this court's and the McGreevys' resources. *See Calvert*, ¶ 45; *Castillo*, 148 P.3d at 292 ("Sanctions under Rule 38 thus perform two vital functions: They compensate the prevailing party for the expense of having to defend a wholly meritless appeal, and by deterring frivolity, they preserve the appellate calendar for cases truly worthy of consideration." (quoting *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1578 (Fed. Cir. 1991))). Thus, the McGreevys are entitled to recover attorney fees incurred in connection with those issues, to the extent those fees can be separately quantified. They are also entitled to their costs under C.A.R. 39(a)(3).

¶ 35    In a footnote, Justin reiterates his prior request for attorney fees and costs incurred in seeking dismissal of and responding to the McGreevys' first appeal.  For similar reasons, we reject his request.

¶ 36    Pursuant to C.A.R. 39.1, we direct the district court on remand to (1) determine the amount of reasonable attorney fees and costs the McGreevys incurred on appeal related to the issues that Justin attempts to relitigate, if those fees can be separately quantified; and (2) determine how the award of attorney fees should be allocated as between Justin and his attorney, *see* § 13-17-102(3); *Castillo,* 148 P.3d at 293.

## V.    Disposition

¶ 37    We reverse the district court's amended judgment — except as to its denial of the McGreevys' request for attorney fees under section 13-17-102, which was not appealed and therefore remains undisturbed — and reinstate the court's original judgment except to the extent that it was otherwise reversed by the *McGreevy I* division. On remand, the court should take the following steps:

- With respect to the joint venture claim, the court must decide whether the parties (a) agreed not to reimburse

contributions or (b) never reached any agreement on the reimbursement of contributions.  If the court finds that the parties agreed not to reimburse contributions, then the McGreevys are not entitled to recover their contributions and the court's original damages calculation as to this claim may stand.  If the court finds that the parties never reached an agreement, then the court must award the McGreevys additional damages for a return of their contributions.

- With respect to the breach of fiduciary duty claim, the court must determine whether the McGreevys proved the elements of the claim.  If the court determines that the McGreevys did not prove the claim, the court must make findings and conclusions denying the claim on the merits. If the court determines that the McGreevys proved the claim, it must make findings and conclusions supporting that decision and determine whether the McGreevys are entitled to noneconomic damages and attorney fees flowing from that claim.

- If the court amends the amount of damages it awards the McGreevys based on either the joint venture claim or the

breach of fiduciary duty claim, then it must also recalculate and award prejudgment interest on the modified damages.

- The court must determine the amount of appellate attorney fees and costs the McGreevys incurred related to the issues that Justin attempts to relitigate and how the award of fees should be allocated as between Justin and his attorney.

JUDGE J. JONES and JUDGE YUN concur.