**Floyd HARDESTY, Plaintiff–Appellant,**

v.

**Edward C. PINO, M.D., Defendant–Appellee.**

**No. 07CA1105.**

Colorado Court of Appeals,
Div. II.

Feb. 5, 2009.

Leventhal, Brown & Puga, P.C., Benjamin Sachs, Daniel A. Lipman, Denver, CO, for Plaintiff–Appellant.

Pryor, Johnson, Carney, Karr & Nixon, P.C., Craig A. Sargent, Greenwood Village, CO; Jaudon & Avery, LLP, David H. Yun, Denver, CO, for Defendant–Appellee.

Opinion by Judge CONNELLY.

Plaintiff, Floyd Hardesty, appeals from a judgment entered upon a jury verdict in favor of defendant, Edward C. Pino, M.D. We hold the trial court properly (1) applied rulings in a prior appeal to limit plaintiff's negligence claims; and (2) proceeded with an alternate juror when a regular juror failed to return in the middle of trial. Accordingly, we affirm the judgment in favor of defendant.

## I. Background

### A. Plaintiff's Gunshot Wound and Loss of Leg

Plaintiff suffered a gunshot wound to his right leg when his gun discharged accidental-ly while he was hunting astride a horse. He was transported to a hospital emergency room in Durango, where defendant was the orthopedic surgeon on call.

Defendant performed surgery on plaintiff's leg. Two days later, after defendant examined plaintiff and changed his dressing, plaintiff was discharged from the hospital. Defendant prescribed two days of additional antibiotics for plaintiff. Four days later, while in discomfort, plaintiff returned to see defendant on an outpatient basis. Defendant examined plaintiff but did not provide any more antibiotics.

Plaintiff's leg ultimately became severely infected, and he was readmitted to the hospital where he was treated by a different on-call doctor. Plaintiff's condition worsened in the hospital despite being administered antibiotics and having his wound cleaned. Some two weeks after the initial gunshot wound, this other doctor amputated plaintiff's right leg in order to save his life.

### B. Plaintiff's Lawsuit and the First Trial

Plaintiff sued defendant and two now-dismissed entities (the hospital and defendant's professional corporation). The first jury trial was in 2002. The jury found defendant negligent, for the "mismanagement of gunshot wound resulting in amputation of leg," and awarded plaintiff $900,000 in damages. The court entered judgment for plaintiff in excess of $1.3 million including interest.

### C. The First Appeal

A division of this court reversed the judgment. *Hardesty v. Pino,* 2004 WL 1903553 (Colo.App. No. 02CA2609, Aug. 26, 2004) (not published pursuant to C.A.R. 35(f)). It concluded "there was insufficient evidence to support a finding of malpractice based upon [defendant's] actions in performing the surgery."

The division's conclusion was based on its review of the testimony of plaintiff's surgical expert, who provided the only evidence that defendant's performance during the surgery itself fell below the appropriate standard of care. As the division explained, this expert's

opinion was predicated on the belief that plaintiff's gunshot wound should have been classified as a "high energy" rather than "low energy" wound. The division held this testimony insufficient because the expert acknowledged that reasonable doctors could have disagreed regarding this initial classification, and opined that defendant's surgical treatment would not have been unreasonable for a low energy wound.

While holding the evidence insufficient as to the surgery itself, the division concluded it was sufficient "to support a finding of liability for [defendant's] negligence in managing the wound after surgery." Because the jury essentially had returned a general verdict, the division could not determine whether the verdict relied on a legally insufficient ground. Finally, the division addressed three discrete evidentiary issues that might arise on a retrial; those issues are not relevant to the present appeal.

The opinion concluded: "The judgment is reversed, and the case is remanded to the trial court for a new trial consistent with the views expressed herein." The supreme court subsequently denied plaintiff's petition for certiorari. This court then issued a mandate stating: "JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS."

### D. Trial Court Proceedings on Remand

On remand, the parties filed extensive briefs on what was and was not precluded by the appellate ruling. Plaintiff sought to proceed with theories of negligent surgical performance (such as defendant's alleged failure to use antibiotic solution at appropriate times) not dependent on whether the wound was high or low energy. Defendant argued the appellate ruling precluded any theories of negligence relating to the surgery itself. The trial court ultimately ruled that plaintiff could not challenge the surgery itself but could challenge post-surgery care, including the alleged decision to close the wound rather than leave it open to heal through "secondary intention."

Plaintiff, limited by these rulings, argued to the jury that defendant was negligent primarily because he failed to leave the wound open and failed to provide proper instructions to plaintiff on his release from the hospital. The jury returned a defense verdict.

### II. Discussion

### A. Law of the Case

Plaintiff's first issue involves the law of the case doctrine. This doctrine contains two branches, analyzed differently, depending on whether the prior "law" of the case involved a court's own rulings or the rulings of a higher court. *See People v. Roybal,* 672 P.2d 1003, 1005 & n. 5 (Colo.1983). This appeal involves the latter: the so-called "mandate rule." 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 4478, at 637 (2002). The mandate rule has been described as the "more powerful version," *Role Models America, Inc. v. Geren,* 514 F.3d 1308, 1311 (D.C.Cir.2008), or "the purest form," Cathy Stricklin Krendl, 1B *Colo. Prac., Methods of Practice* § 25.4, at 346 (5th ed.2004), of the law of the case doctrine.

Plaintiff contends the trial court misapplied the law of the case doctrine. We first hold the de novo standard governs review of these contentions. We then hold the trial court on remand correctly followed this court's mandate to preclude challenges to defendant's performance of the surgery.

### 1. Standard of Review

The parties disagree on the standard of appellate review. Plaintiff writes that "appellate courts in Colorado have not yet definitively addressed the applicable standard," and urges us to follow federal cases conducting de novo review. Defendant responds that de novo review would apply in some respects, but maintains the trial court's ultimate rulings involved discretionary determinations subject to deferential review.

We conclude the de novo standard controls law of the case issues involving trial court compliance with prior appellate rulings. The law of the case doctrine often is described, sometimes without qualification, as a "discretionary" one. *Bloom v. People,* 185 P.3d 797, 811 (Colo.2008); *Brodeur v. Ameri-*

*can Home Assurance Co.,* 169 P.3d 139, 149 (Colo.2007); *In re Bass,* 142 P.3d 1259, 1263 (Colo.2006). These descriptions, however, involve a court's adherence to *its own* prior rulings. *See Giampapa v. American Family Mutual Ins. Co.,* 64 P.3d 230, 243 (Colo.2003) ("law of the case doctrine is merely discretionary *when applied to a court's power to reconsider its own prior rulings")* (emphasis added).

 Trial courts have no discretion to disregard binding appellate rulings: "[t]he law of the case as established by an appellate court *must be followed* in subsequent proceedings before the trial court." *Roybal,* 672 P.2d at 1005 (emphasis added). Nor are trial courts in any better position than appellate courts to interpret prior appellate rulings. Accordingly, rulings involving this branch of the law of the case doctrine should be reviewed de novo. *Civil Service Commission v. Carney,* 97 P.3d 961, 966 (Colo.2004).

We note most federal appellate courts apply de novo review in this context. *See, e.g., United States v. Williams,* 517 F.3d 801, 806 (5th Cir.2008); *Volvo Trademark Holding Aktiebolaget v. Clark Machinery Co.,* 510 F.3d 474, 480 (4th Cir.2007); *Harlow v. Children's Hospital,* 432 F.3d 50, 55 (1st Cir. 2005); *United States v. Bobo,* 419 F.3d 1264, 1267 (11th Cir.2005); *Roboserve, Inc. v. Kato Kagaku Co.,* 121 F.3d 1027, 1031 (7th Cir. 1997); *Wilmer v. Board of County Commissioners,* 69 F.3d 406, 409 (10th Cir.1995); *but cf. Procter & Gamble Co. v. Haugen,* 317 F.3d 1121, 1125 (10th Cir.2003) ("When reviewing the district court's application of our mandate, we consider whether the court abused the limited discretion that our mandate left to it.").

### 2. Analysis

This appeal requires us to determine (a) what the first appeal decided; and (b) whether it was binding on the trial court. Plaintiff contends the first appeal did not "clearly and unequivocally" preclude retrial of whether defendant negligently performed the surgery and, in any event, did not yield a "purely legal" ruling covered by law of the case doctrine. These contentions rest on too narrow a view of the prior ruling and the law of the case doctrine.

### a. What the First Appeal Decided

Plaintiff proposes a narrow view of what was encompassed within the appellate mandate. He contends the court-ordered retrial should not be held to preclude negligence theories or expert testimony unless the court "clearly and unequivocally" so ordered. Under plaintiff's view, the opinion and mandate did not preclude retrial of any negligence claims or at most precluded only those claims turning on the classification of his gunshot wound as a high- or low-energy wound. This unduly constricts the mandate rule in general and the prior opinion in particular.

 The general rule is that "[c]onclusions of an appellate court on issues presented to it as well as rulings logically necessary to sustain such conclusions become the law of the case." *Super Valu Stores, Inc. v. District Court,* 906 P.2d 72, 78–79 (Colo.1995). On the other hand, "[d]ictum does not become law of the case." *People ex rel. Gallagher v. District Court,* 666 P.2d 550, 553 (Colo.1983). A holding and its necessary rationale, however, are not dicta. *See* Michael Abramowicz & Maxwell Stearns, *Defining Dicta,* 57 Stan. L.Rev. 953, 1048 (2005) (explaining that "ancient distinction between the holding and the *ratio decidendi* " has blurred, but both are distinct from dicta). Thus, both an appellate holding and its necessary rationale become law of the case controlling future proceedings.

Here, the prior appeal held "there was insufficient evidence to support a finding of malpractice based upon [defendant's] actions in performing the surgery." Its rationale was that the only expert testimony of negligent surgical performance depended on classifying the wound as high-energy but conceded reasonable surgeons could have disagreed as to its classification.

The mandate order reversed the judgment and remanded the case "with directions." Those "directions," set forth in the opinion, were to conduct "a new trial consistent with the views expressed" therein. A new trial would be consistent with those directions

only if it adhered to *both* the appellate holding (that there was insufficient evidence of negligent surgical performance) and its rationale (that a negligence finding cannot be predicated on the classification of the wound because reasonable surgeons could disagree on the classification).

Plaintiff cannot escape the broad appellate holding by limiting it to its specific rationale. Rather, the holding and rationale each must be given effect because the decided "issue may be broader than the specific arguments addressed to the court of appeals." 18B Wright, Miller & Cooper, *supra*, § 4478.3, at 759–60. Thus, for example, appellate "rejection of an argument that there was sufficient evidence that the defendant went through a red light ... may be treated as deciding that there was no sufficient evidence of negligence." *Id.* at 760.

b. The Binding Effect of the First Appeal

██ Plaintiff argues rulings on evidentiary insufficiency are nonbinding because they do "not involve a purely legal question." But whether to characterize evidentiary insufficiency as "legal error" is "a purely semantical dispute," *Griffin v. United States,* 502 U.S. 46, 58–59, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), and many cases describe evidentiary sufficiency as "a question of law to be resolved by the court." *Baltimore & Carolina Line v. Redman,* 295 U.S. 654, 659, 55 S.Ct. 890, 79 L.Ed. 1636 (1935); *accord Jagow v. E–470 Public Highway Authority,* 49 P.3d 1151, 1158 (Colo.2002); *People v. Williams,* 172 Colo. 434, 439, 473 P.2d 982, 984 (1970); *Swanson v. McQuown,* 139 Colo. 442, 447, 340 P.2d 1063, 1066 (1959). At the very least, rulings on evidentiary sufficiency involve mixed questions of law and fact, which is why they are reviewed de novo on appeal. *See Jagow,* 49 P.3d at 1158.

██ A ruling's effect does not turn on whether it addressed a pure question of law or a mixed question of law and fact. *Roybal,* 672 P.2d at 1005 n. 6 (law of the case doctrine "does not distinguish" between whether original appellate decision "established a legal principle" or simply "appl[ied] that principle to the facts"). Simply put, a "ruling that evidence was insufficient to support some

finding is the type of ruling that establishes the law of the case." *Wilder v. Apfel,* 153 F.3d 799, 803 (7th Cir.1998) (citing cases).

██ Plaintiff further suggests the binding effect should turn on whether the prior decision was an "evidentiary ruling" or "dismissal." This distinction is inapposite: the mandate rule covers "pronouncement[s] of an appellate court on an issue in a case presented to it," *Roybal,* 672 P.2d at 1005, regardless of whether they involve an "evidentiary" ruling or a "dismissal." Plaintiff gleans the distinction from *Aardvark Art, Inc. v. Lehigh/Steck–Warlick, Inc.,* 284 Ill.App.3d 627, 220 Ill.Dec. 259, 672 N.E.2d 1271 (1996); and *Koch v. Southern Pacific Transportation Co.,* 274 Or. 499, 547 P.2d 589 (1976). But those cases did not involve prior appellate rulings; instead, they addressed whether a party is bound by a prior *trial court* ruling not challenged in an appeal resulting in a remand on other grounds. *Aardvark Art,* 220 Ill.Dec. 259, 672 N.E.2d at 1276–77; *Koch,* 547 P.2d at 596–97. Such cases raise "[v]ery different considerations" than cases involving issues actually decided in a prior appeal. *See* 18B Wright, Miller & Cooper, *supra,* § 4478.6, at 819.

Plaintiff, quoting *Major v. Benton,* 647 F.2d 110, 112 (10th Cir.1981), finally contends the law of the case doctrine should "be applied with good sense" because it "is not an 'inexorable command.'" This is true, though *Major* involved a trial court's power to reconsider its own prior rulings, *see id.,* and the doctrine "is more flexible" in that context. *Roybal,* 672 P.2d at 1005 n. 5.

Plaintiff has not identified any exception to the mandate rule that might apply here. He offered no additional evidence and, in any event, "[e]vidence that could have been presented earlier commonly is not considered, in keeping with the general rules that discourage slovenly or ill-considered approaches to the first trial." 18B Wright, Miller & Cooper, *supra,* § 4478, at 683; *see Roybal,* 672 P.2d at 1006 n. 7 (distinguishing "newly-discovered evidence" from evidence that was available but not presented previously).

### B. Substitution of Alternate Juror

Plaintiff argues the trial court erroneously substituted an alternate juror for a sitting juror during the middle of trial. The sitting juror, who lived forty minutes from the courthouse, failed to return from a lunch break after informing the court he "was sick" and "wasn't coming back." The trial court heard the positions of both sides: plaintiff argued the court should suspend trial until the next morning to see if it was just a "24–hour bug" or at least should try to contact the juror; defendant responded that trial had to proceed that afternoon because a critical defense witness would be leaving town. The court decided not to delay the trial but to replace the absent juror with an alternate.

■■■ The "purpose of seating an alternate juror is to have available another juror when, through unforeseen circumstances, a juror is unable to continue to serve." *People v. Abbott*, 690 P.2d 1263, 1268 (Colo.1984); *see* § 13–71–142, C.R.S.2008 ("In all civil and criminal trials, the court may call and impanel alternate jurors to replace jurors who are disqualified or who the court may determine are unable to perform their duties prior to deliberation."); C.R.C.P. 47(b) ("Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties."). A "trial court is in the best position to evaluate whether a juror is 'unable' to serve, and its decision to excuse a juror will not be disturbed absent a gross abuse of discretion." *Abbott*, 690 P.2d at 1268.

■ The trial court did not abuse its discretion by replacing the absent juror with an alternate. The juror indisputably failed to return after reporting he was sick and would not be coming back; meanwhile, a defense witness was going to testify that afternoon and then leave town. The court was well within its discretion to proceed with an alternate juror so as not to delay the trial.

■ Contrary to plaintiff's contentions, the trial court was not required to conduct a more thorough "investigation" to make a "factual determination" regarding the absent juror's physical inability to continue. Where some unforeseen circumstance unrelated to the merits of a case hampers a juror's continued ability to sit, "replacing a juror with an alternate is ... in the nature of an administrative task." *People v. Anderson*, 183 P.3d 649, 651 (Colo.App.2007); *cf. Garcia v. People*, 997 P.2d 1, 5–8 (Colo.2000) (discussing the different considerations where juror is replaced for possible misconduct after deliberations have begun).

Courts repeatedly have upheld midtrial replacement of jurors in cases such as this. *E.g., Abbott*, 690 P.2d at 1268–69 (trial court properly excused juror whose wife was being admitted into hospital, notwithstanding defense argument "there was no showing that the juror could not have handled the matter by a phone call or that the hospital admission was other than a routine matter"); *Anderson*, 183 P.3d at 651 (trial court properly acted "summarily" to excuse "distraught" juror who called to report her son had just been removed from home in handcuffs); *see also United States v. Colkley*, 899 F.2d 297, 303 (4th Cir.1990) ("the district court clearly did not abuse its discretion in ruling that the juror's failure to appear for thirty minutes of testimony warranted substitution without further inquiry"); *United States v. Peters*, 617 F.2d 503, 505 (7th Cir. 1980) (trial court did not abuse its discretion in replacing tardy juror even though juror ultimately turned out to be just ten minutes late).

### III. Conclusion

The judgment is affirmed.

Judge ROY and Judge NIETO * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2008.