23CA0902 Neuhoff v Eagle County 08-01-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA0902 Board of Assessment Appeals Nos. 68920 & 68966 Joe B. Neuhoff Family Partnership, Ltd., Petitioner-Appellee, v. Eagle County Board of Equalization; and Eagle County Board of Commissioners, Respondents-Appellants, and Board of Assessment Appeals, Appellee. ORDER AFFIRMED Division I Opinion by JUDGE SCHOCK Welling and Taubman*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 1, 2024 GPS Legal Solutions, Jennifer Gilbert, Denver, Colorado, for Petitioner-Appellee Bryan R. Treu, County Attorney, Christina Hooper, Deputy County Attorney, Lane Sheldon, Assistant County Attorney, Eagle, Colorado, for Respondents-
Appellants 
Philip J. Weiser, Attorney General, John August Lizza, First Assistant Attorney General, Krista Maher, Senior Assistant Attorney General, Evan P. Brennan, Assistant Attorney General, Denver, Colorado, for Appellee *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023.
1 ¶ 1 The Eagle County Board of Equalization and Eagle County Board of County Commissioners (collectively, the County) appeal an order of the Board of Assessment Appeals (BAA) reclassifying two parcels of land owned by the Joe B. Neuhoff Family Partnership, Ltd. (the Partnership) as residential for tax purposes. We affirm. I. Background ¶ 2 The Partnership owns three parcels of land in Eagle County. One parcel has a single-family residence on it (the residential parcel). The other two (the subject parcels) are contiguous with the first and are undeveloped. For years, the residential parcel was classified for tax purposes as “residential land” and taxed at the residential assessment rate, while the subject parcels were classified as “vacant land” and taxed at a substantially higher rate. ¶ 3 In 2016, the Partnership filed petitions for an abatement or refund of taxes for the three preceding tax years and an appeal of the tax assessment for 2016, asserting that the subject parcels should have been classified as residential land. The County denied the petitions and declined to reclassify the subject parcels. 
2 A. BAA Appeal ¶ 4 The Partnership appealed the County’s decisions to the BAA. The County stipulated to two of the three elements of the definition of “residential land”: the subject parcels were contiguous with, and under common ownership with, the residential parcel. The parties’ dispute centered on the third element: whether the subject parcels were “used as a unit in conjunction with the residential improvements.” § 39-1-102(14.4)(a), C.R.S. 2016.
1 The Partnership argued they were, asserting that “passive uses such as view protection, buffering, and privacy” were sufficient. The County argued they were not, distinguishing “actual use” from “subjective enjoyment . . . of the general benefits of property ownership.” ¶ 5 The BAA held a hearing on the appeals. At the hearing, Lawrence Neuhoff testified on behalf of the Partnership that his family purchased the subject parcels primarily to preserve the rural setting surrounding the residence. He testified that the family used the subject parcels “primarily to enjoy the views” of the countryside from the residence. He explained that the family spent “a lot of 1 This statute has since been amended. We apply the version of the statute in effect at the time of the challenged classifications. 
3 time” on the back patio and deck “looking at the wildlife and, in particular, the elk” crossing the subject parcels. Neuhoff also testified that the family used the subject parcels for recreational activities, including walking, hiking, sledding, and playing baseball. ¶ 6 The BAA also heard testimony from an appraiser at the Eagle County Assessor’s Office who had visited the subject parcels. The appraiser testified that he did not see any physical indication of use, such as hiking trails, planted trees, fencing, or “evidence of some kind of purpose of [the subject parcels] for the support” of the residence. He explained that the subject parcels “looked like an unimproved vacant lot . . . with the natural foliage.” The appraiser also testified that development of the subject parcels would not have any significant impact on the views from the residence. ¶ 7 The BAA issued two separate, but virtually identical, orders — one for 2013 to 2015 and one for 2016 — denying the appeals and upholding the “vacant land” classification (BAA Order I). The BAA explained that it was “not convinced” by the Partnership’s claimed uses of the subject parcels and was “persuaded” by the county appraiser’s testimony that he “did not observe any evidence of use.” The BAA found that, if the subject parcels were developed, “views 
4 from [the residence] would not be negatively impacted” and “wildlife viewing from the residential lot would not be diminished.” ¶ 8 The BAA also found that Neuhoff’s testimony about past use of the subject parcels for sledding, baseball, and wildlife viewing was “not compelling.” It found that “these uses of the subject lots [were] minimal at best” and “question[ed] whether these uses occurred on the subject lots at all as opposed to the residential lot or the open space.” It was “not convinced” that the claimed uses made the subject parcels “an integral part of the residence.” Based on these findings, the BAA concluded that the subject parcels were not used “as a unit in conjunction with the residential improvements.” B. Neuhoff I ¶ 9 The Partnership appealed the BAA’s orders. See Joe B. Neuhoff Fam. P’ship, Ltd. v. Bd. of Cnty. Comm’rs, (Colo. App. No. 17CA0762, Dec. 13, 2018) (not published pursuant to C.A.R. 35(e)) (Neuhoff I). It argued that (1) the BAA misconstrued the statutory phrase “used as a unit” to require visible evidence of use; (2) the BAA erroneously relied on the likelihood of future conveyance of the parcels as a unit; and (3) certain of the BAA findings — concerning use of the subject parcels for view preservation and privacy — were 
5 not supported by the record. Id. at ¶ 21. The Partnership did not challenge the BAA’s findings as to the use of the subject parcels for wildlife viewing and recreational activities. Id. at ¶ 23 n.3. ¶ 10 A division of this court affirmed. Noting a division split as to the definition of the term “use,” the division held that the BAA properly interpreted section 39-1-102(14.4)(a) to require “evidence of integral, not merely incidental, use.” Id. at ¶¶ 27-28. Although the division agreed with the Partnership that the BAA improperly considered the likelihood of the parcels’ future separate conveyances, it concluded that the BAA’s findings that the subject parcels were not “used” for view preservation or privacy were sufficient to sustain the orders. Id. at ¶¶ 37-38. It further concluded that those findings had record support, given the other development in the area and evidence that development of the subject parcels would not block views and would impact privacy only “[t]o a certain extent.” Id. at ¶¶ 42-45. ¶ 11 The Partnership filed a petition for writ of certiorari, which the supreme court held in abeyance pending its resolution of four similar pending cases. 
6 C. Mook v. Board of County Commissioners ¶ 12 The supreme court consolidated three of those cases and decided them in a single opinion addressing the definition of “residential land” under section 39-1-102(14.4)(a).
2 See Mook v. Bd. of Cnty. Comm’rs, 2020 CO 12. As relevant to this case, the court held that land is “used as a unit” with residential land if the landowner uses “multiple parcels of land together as a collective unit of residential property.” Id. at ¶ 77. The landowner must “employ the subject property as a constituent part of a larger whole,” treating the parcels as a single residential unit. Id. at ¶ 51. ¶ 13 In adopting this standard, the court rejected several proposed limitations. First, a subject parcel need not be “necessary” or “essential” to the use of a contiguous residential parcel. Id. at ¶ 52. Second, it is immaterial whether the parcels would likely be conveyed as a unit in the future. Id. at ¶ 55. All that matters is how the owner presently uses the land. Id. Third, “use” is not limited to “active” uses, but may include “passive” uses like walking a dog, viewing nature, or maintaining privacy. Id. at ¶¶ 57, 66, 68. 2 A separate opinion was issued in the fourth case the same day. See Ziegler v. Park Cnty. Bd. of Cnty. Comm’rs, 2020 CO 13. 
7 Fourth, a subject parcel does not need to contain a residential improvement. Id. at ¶ 59. It is sufficient if there are residential improvements on the “collective unit” of property. Id. at ¶ 60. D. Neuhoff II ¶ 14 Based on Mook, the supreme court granted the petition for writ of certiorari in Neuhoff I, vacated the judgment, and remanded the case to this court for reconsideration in light of Mook. See Joe B. Neuhoff Fam. P’ship, Ltd. v. Bd. of Assessment Appeals, (Colo. No. 19SC54, Mar. 16, 2020) (unpublished order). ¶ 15 On remand, the division reversed the BAA’s orders and remanded the case to the BAA for further proceedings. See Joe B. Neuhoff Fam. P’ship, Ltd. v. Bd. of Cnty. Comm’rs, slip op. at ¶¶ 5, 18 (Colo. App. No. 17CA0762, Oct. 1, 2020) (not published pursuant to C.A.R. 35(e)) (Neuhoff II). It explained that Mook had clarified the legal standard for the “used as a unit” requirement contrary to the holdings of earlier cases. Id. at ¶¶ 10-11. The division further concluded that some of the rationales underlying the Neuhoff I decision were no longer valid under Mook. Id. at ¶ 15. ¶ 16 The division therefore remanded the case to the BAA to reconsider its orders under the legal standard announced in Mook. 
8 Id. at ¶ 16. It declined to address the other issues addressed in Neuhoff I — including the challenges to the BAA’s factual findings — because those issues “may not arise again, depending on the BAA’s reassessment of the ‘used as a unit’ requirement.” Id. at ¶ 17. The division authorized the BAA, “[i]n its discretion,” to “order such additional argument or evidence as it deems necessary.” Id. E. BAA Order II ¶ 17 For more than two years after Neuhoff II, the case sat dormant, with neither the parties nor the BAA taking any action. Eventually, the County moved to dismiss for failure to prosecute. The BAA denied the motion and set the matter for a hearing. Two months later, it vacated the hearing and indicated it would decide the case based on the record of the prior proceedings. The BAA then issued an order (BAA Order II) reversing its prior decision and concluding that in light of Mook and Neuhoff II, the subject parcels must be classified as residential land for the relevant tax years. ¶ 18 After recounting the general nature of the testimony of Neuhoff and the county appraiser, the BAA concluded: [U]nder the plain language of the statute and the decision in Mook, the subject parcels are used as a unit with the residential parcel 
9 because they are used for viewing nature and wildlife from the residence. The Mook Court explicitly cited “viewing nature” as a type of use that can satisfy the “used as a unit” requirement. [Citation omitted.] There was no dispute that “viewing nature” from the residence was a use of the subject parcels. Furthermore, the Colorado Supreme Court explained that the statute “directs assessors to classify property as residential land according to how the owner presently uses the land,” not as an asset which could be sold in the future. ¶ 19 The County moved to reconsider, arguing that the BAA had misstated or disregarded its prior findings of fact, made new findings of fact that were contrary to the record, and misapplied the relevant legal standard. The BAA did not rule on the motion. II. Analysis ¶ 20 The County challenges BAA Order II on three grounds. First, it argues that the BAA abused its discretion by making factual findings that conflicted with its factual findings in BAA Order I. Second, it contends that those inconsistent factual findings violated the mandate rule because the prior factual findings were upheld on appeal in Neuhoff I. Third, it asserts that the BAA misapplied the Mook test. We address and reject each argument in turn. 
10 A. Applicable Law and Standard of Review ¶ 21 Under Colorado law, residential real property is assessed at a lower rate for tax purposes than other real property. See Mook, ¶¶ 25-27; Colo. Const. art. X, § 3(1)(b) (amended 2020). Residential real property includes both “residential land” and “residential improvements.” § 39-1-102(14.5). For the tax years at issue, “residential land” means “a parcel or contiguous parcels of land under common ownership upon which residential improvements are located and that is used as a unit in conjunction with the residential improvements located thereon.” § 39-1-102(14.4)(a). ¶ 22 As applied to unimproved parcels of land, this definition has three elements. To qualify as residential land, unimproved parcels must be (1) contiguous with residential land; (2) used as a unit with residential land; and (3) under common ownership with residential land. Mook, ¶ 28. Only the second element is at issue in this case. ¶ 23 The appropriate classification of land for property tax purposes is a mixed question of fact and law. Sandra K. Morrison Tr. v. Bd. of Cnty. Comm’rs, 2020 COA 74, ¶ 8. The evaluation of witness credibility, weighing of the evidence, and resolution of factual conflicts are all matters within the exclusive province of the 
11 BAA as fact finder. Id. at ¶ 9. We must accept the BAA’s factual findings unless they are clearly erroneous, meaning they have no support in the record. Rare Air Ltd., LLC v. Prop. Tax Adm’r, 2019 COA 134, ¶ 14. We review de novo whether the BAA’s decision comports with the statutory scheme. Id. at ¶ 15. ¶ 24 We will set aside a BAA order only if it constitutes an abuse of discretion or was arbitrary and capricious, based on clearly erroneous findings of fact, unsupported by substantial evidence, or otherwise contrary to law. Sandra K. Morrison Tr., ¶ 10. Conversely, we will uphold the BAA’s property classification if it has a reasonable basis in law and is supported by substantial evidence. O’Neil v. Conejos Cnty. Bd. of Comm’rs, 2017 COA 30, ¶ 11. B. Inconsistent Factual Findings ¶ 25 The County first contends that the BAA abused its discretion by making factual findings in BAA Order II that were inconsistent with its factual findings and credibility determinations in BAA Order I. Specifically, the County argues that the BAA’s finding that the subject parcels are used for viewing nature and wildlife from the residence contradicts its prior rejection of these uses. We disagree. 
12 ¶ 26 In BAA Order I, the BAA applied a narrower construction of the “used as a unit” requirement than the one later announced in Mook — one that required the subject parcels to be used as “an integral part” of the residence. See Mook, ¶ 52; Rust v. Bd. of Cnty. Comm’rs, 2018 COA 72, ¶10 (“[M]ore than occasional use and peace and serenity are required to classify an adjacent, undeveloped lot as residential.”), cert. granted, judgment vacated, and case remanded, No. 18SC438, 2020 WL 1257466 (Colo. Mar. 16, 2020) (unpublished order); Twilight Ridge, LLC v. Bd. of Cnty. Comm’rs, 2018 COA 108, ¶ 24 (“It is well within the BAA’s discretion to determine that use of vacant land to look at wildlife or enjoy views is not the type of integral use that establishes that vacant land is being used as a unit with a contiguous residential parcel.”), cert. granted, judgment vacated, and case remanded, No. 18SC622, 2020 WL 1258514 (Colo. Mar. 16, 2020) (unpublished order). ¶ 27 It was in that legal context that the BAA found in BAA Order I that the subject parcels were not “used as a unit in conjunction with the residential improvements for the enjoyment or preservation of views” and that Neuhoff’s testimony about using the subject parcels for wildlife viewing, among other things, was “not 
13 compelling.” In making those findings, the BAA relied on several factors that Mook made clear are not controlling, including that (1) the scenic views and wildlife viewing would not be negatively impacted by development of the subject parcels; (2) the use of the subject parcels for wildlife viewing was minimal; (3) there was no physical evidence of use occurring on the subject parcels; and (4) the claimed uses did not make the subject parcels “an integral part of the residence.” See Mook, ¶¶ 52, 55, 57, 60, 66. In other words, the claimed uses of the subject parcels did not rise to the level of “used as a unit” under the then-prevailing legal standard. ¶ 28 But the BAA did not say in BAA Order I that the Neuhoff family did not view nature and wildlife from the residence. To the contrary, its finding that “wildlife viewing from the residential lot would not be diminished” in the event of development necessarily indicated that the family did view wildlife from the residence. So too for its suggestion that the claimed uses might have occurred on the residential lot, as opposed to on the subject lots. Thus, there was no conflict in the BAA’s factual findings in BAA Order I and BAA Order II. It was just that something more was required under 
14 the legal standard the BAA applied in deciding BAA Order I. That “something more” is what the BAA found “not compelling.” ¶ 29 We acknowledge that, viewed in a vacuum, some of the BAA’s statements could be read to suggest that the subject parcels were not used for viewing nature and wildlife. But a closer look at those statements, particularly in conjunction with the then-prevailing legal standard, indicates otherwise. For example, while the BAA said in BAA Order I that it did not “believe that the subject lots were used as a unit in conjunction with the residential improvements for the enjoyment or preservation of views,” that conclusion was based on its finding that the views would remain if the subject parcels were developed. In other words, the BAA’s “disbelief” was not with whether the Neuhoff family enjoyed views from the residence, but with whether the subject parcels were necessary to preserve those views. Similarly, the BAA “seriously question[ed]” whether wildlife viewing (and other claimed uses) “occurred on the subject lots at all.” But it did not question whether the subject parcels were used to view wildlife from the residence, as it later found in BAA Order II. ¶ 30 Moreover, even if the BAA’s factual findings in the two orders were inconsistent, nothing precluded the BAA from reconsidering 
15 its own factual findings, particularly in light of the newly refined legal standard and the remand from this court. See Owners Ins. Co. v. Dakota Station II Condo. Ass’n, 2021 COA 114, ¶ 28 (“A trial court remains free to reconsider its own factual findings later in the case, as long as doing so is consistent with the mandate.”); S. Cross Ranches, LLC v. JBC Agric. Mgmt., LLC, 2019 COA 58, ¶ 40. Unlike in Southern Cross Ranches, there was no question why the BAA changed its ruling: the supreme court had clarified the legal standard in a way that undermined some of the BAA’s rationales, and the court of appeals had remanded the case for reconsideration as a result. See Neuhoff II, ¶¶ 15-16; cf. S. Cross Ranches, ¶ 46 (holding that trial court abused its discretion in issuing inconsistent rulings when “the second order did not mention the first order, much less give any reason for reaching the opposite result”). ¶ 31 The County seeks to distinguish Owners Insurance on the ground that, in that case, the remand court held a new evidentiary hearing before reversing its prior ruling. See Owners Ins. Co., ¶¶ 12-14. But the new evidentiary hearing was not a prerequisite to the new findings in Owners Insurance. Rather, as in this case, the division noted that “the remand court had discretion to decide 
16 whether another evidentiary hearing was warranted.” Id. at ¶ 27. Whether or not it did so, it was required to reassess the facts in light of the newly articulated legal standard. Id. Similarly, the supreme court’s articulation of the correct “used as a unit” standard in Mook “necessarily affected all the issues going to” the Partnership’s use of the subject parcels — thus permitting the BAA to reassess its factual findings under that new standard. Id. ¶ 32 The County also takes issue with the BAA’s statement that “[t]here was no dispute that ‘viewing nature’ from the residence was a use of the subject parcels.” But there was no dispute that the Neuhoff family viewed nature from the residence.
3 Neuhoff testified that the family spent “a lot of time” on the back patio and deck “enjoy[ing] the views off the subject parcels” and “looking at the wildlife.” He testified that an elk path crossed one of the subject parcels and the family awoke early to watch the elk. The County presented no evidence — or even argument — to dispute this point. It disputed only (1) the extent to which the family was physically on 3 As we explain above, this finding is not inconsistent with the BAA’s skepticism in BAA Order I as to whether wildlife viewing occurred “on the subject lots.” 
17 the subject parcels and (2) whether the views from the residence met the standard of “used as a unit” when those views would not be negatively impacted by development of the subject parcels. ¶ 33 Nor did the BAA find Neuhoff incredible on this limited point in BAA Order I. Indeed, as noted above, by finding that the views of nature and wildlife from the residence would not be diminished by development, the BAA seemed to accept Neuhoff’s testimony that the family did view nature and wildlife from the residence. To the extent the BAA found certain of Neuhoff’s testimony “not compelling,” it appears to have been referring to testimony about claimed uses beyond the views from the residence — perhaps because Neuhoff was reaching to satisfy a heightened standard. ¶ 34 Thus, the BAA did not abuse its discretion by finding that the subject parcels are used for viewing nature and wildlife from the residence after previously concluding that they were not “used as a unit in conjunction” with the residence for these purposes. Because the record supports this finding, we may not disturb it. See Rare Air, Ltd., ¶ 14. 
18 C. Mandate Rule ¶ 35 We also reject the County’s argument that the BAA’s finding in BAA Order II that the subject parcels are used for viewing nature and wildlife from the residence violates the mandate rule.
4 ¶ 36 The law of the case doctrine contains two branches: one for the court’s own rulings and one for the rulings of a higher court. Owners Ins., ¶ 22. The first branch, called the “law of the case,” refers to courts’ discretionary practice of generally declining to reopen what has already been decided. Id. at ¶ 23. The doctrine does not apply to factual questions and does not “prevent a court from revisiting its own prior rulings, particularly where those rulings are no longer sound due to changed conditions of law.” Id. 4 The Partnership and the BAA assert that the County did not preserve this argument because it did not raise it before the BAA. But the County did not have an opportunity to raise this (or its other two arguments) before BAA Order II because the BAA sua sponte vacated the hearing and issued the order ten days later. See C.R.C.P. 46 (“[I]f a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him.”). And although the County’s motion to reconsider did not expressly refer to law of the case, it effectively asserted the same argument the County makes on appeal by arguing that the BAA was bound by its factual findings in BAA Order I, in part because those findings had not been disturbed on appeal. We therefore deem this argument sufficiently preserved. 
19 ¶ 37 The second branch of the law of the case is the mandate rule. Id. at ¶ 24. Under this rule, “a lower [tribunal] must follow the law of the case as laid out by an appellate tribunal.” Thompson v. Catlin Ins. Co. (UK) Ltd., 2018 CO 95, ¶ 21. That includes the appellate court’s “[c]onclusions . . . on issues presented to it as well as rulings logically necessary to sustain such conclusions.” Owners Ins., ¶ 24 (citation omitted). We review de novo whether a tribunal violated an appellate mandate. Thompson, ¶ 22. ¶ 38 We conclude that the BAA complied with the mandate, as expressed in Neuhoff II. The division mandated that the BAA reconsider BAA Order I, with or without additional argument or evidence, in light of the legal standard articulated in Mook and Neuhoff II. Neuhoff II, ¶ 16. The BAA did that, stating that, in conducting its analysis, it “relie[d] on the applicable law recited” in Neuhoff II, and summarizing the legal standard set forth in Mook before applying that standard anew to the facts of the case. ¶ 39 The County contends that the BAA’s factual findings in BAA Order I constitute the law of the case because they were “affirmed” in Neuhoff I and that the purportedly inconsistent findings in BAA Order II thus violate the mandate rule. This argument depends on 
20 a premise that we have already rejected — namely, that the findings in the two orders conflict. But even if we were to accept the premise, the argument fails for several additional reasons. ¶ 40 To begin, the BAA’s findings were not affirmed. Neuhoff I — which did not address the BAA’s findings as to wildlife viewing, Neuhoff I, ¶ 23 n.3 — was vacated by the supreme court. Neuhoff II declined to address any challenges to the BAA’s factual findings. See Neuhoff II, ¶ 17. Thus, no appellate decision stands considering — much less affirming — the factual findings in BAA Order I. ¶ 41 In any event, an appellate court’s affirmance of a lower tribunal’s findings of fact does not “set those findings in stone.” Owners Ins., ¶ 28. It simply means the findings were supported by the record and not clearly erroneous. Id. There may also be record support for a contrary finding. See Casserly v. State, 844 P.2d 1275, 1281 (Colo. App. 1992) (“A court’s findings based upon a choice between two plausible views of the weight of the evidence or upon a choice between conflicting inferences from the evidence is not clearly erroneous.”). And in that case, absent something in the appellate mandate to the contrary, the mandate rule does not preclude a lower tribunal from changing its factual findings. 
21 Owners Ins., ¶ 28. More to the point in this case, it does not preclude the lower tribunal from considering how its prior factual findings may be altered by a new legal standard. Id. at ¶ 27. ¶ 42 In arguing otherwise, the County relies on Hardesty v. Pino, 222 P.3d 336 (Colo. App. 2009). But Hardesty involved the opposite situation, in which a division of this court had concluded the evidence was insufficient to support the trial court’s finding. Id. at 338. In the second appeal, the division concluded that a ruling that the evidence was insufficient establishes the law of the case. Id. at 341. But that is because a ruling of evidentiary insufficiency means that the evidence cannot support a finding as a matter of law. Id. In contrast, a ruling that the evidence is supported by the record does not exclude the possibility of a contrary finding. ¶ 43 We therefore conclude that the factual findings in BAA Order II did not violate the mandate in Neuhoff II. D. Used as a Unit ¶ 44 The County’s final argument is that the BAA did not apply the correct legal standard in determining that the subject parcels were “used as a unit” in conjunction with the residential improvements. 
22 It asserts that the BAA concluded that any alleged use satisfies the Mook test without actually applying that test. We again disagree. ¶ 45 Mook establishes that the “used as a unit” requirement consists of two basic principles: (1) the parcels must be used “as a ‘unit,’ i.e., as though they’re a greater, single parcel of land”; and (2) the owner must use “that collective piece of property” in conjunction with the residence. Mook, ¶ 65 (citation omitted). In addition, the primary purpose of the parcel must be for “the support, enjoyment, or other non-commercial activity of the occupant of the residence,” as opposed to “non-residential property uses.” Id. at ¶¶ 69, 72 (citation omitted). But the nature and extent of the use are immaterial. Id. at ¶ 57. The use may consist of any employment of the parcel, including to view nature. Id. ¶ 46 The BAA applied this legal standard. It correctly cited the two controlling principles set forth in Mook, it quoted Mook’s definition of “use,” and it correctly noted that “the use of the subject parcel does not need to be active and could [include] employ[ing] the subject parcel in accomplishing something, such as walking a dog or viewing nature.” The BAA then applied this standard to the facts, finding that (1) the subject parcels were used for viewing 
23 nature and wildlife from the residence, and (2) that use established the subject parcels were used as a unit with the residential parcel. ¶ 47 Contrary to the County’s argument, the BAA did not reach this conclusion simply because a use was alleged. It found, with record support, that the subject parcels were in fact used for that purpose. See Gyurman v. Weld Cnty. Bd. of Equalization, 851 P.2d 307, 308, 310 (Colo. App. 1993) (holding that there was “ample support” for BAA’s residential land classification where landowner testified that he used property by “looking at the wildlife that was out there and keeping people off of it”), cited with approval in Mook, ¶¶ 73-74. ¶ 48 The County asserts that the subject parcels do not satisfy the Mook test because (1) the parcels are not used as a collective unit of property; (2) the subject parcels are not used in conjunction with the residential improvements; and (3) the primary purpose of the subject parcels is not for the support, enjoyment, or other non-
commercial activity of the residents. For the most part, these arguments simply reframe the County’s challenges to the BAA’s factual findings. In essence, the County contends that the subject parcels were not used as required because they were not used at all. As we have explained above, the BAA found otherwise. And to 
24 the extent the BAA made ostensibly contrary findings in BAA Order I, it was applying a heightened standard of “use” and considering other uses beyond nature and wildlife viewing. ¶ 49 The County’s remaining arguments concern the weight of the evidence. For example, the County cites the appraiser’s testimony that the subject parcels are separated from the residential parcel by a line of trees and that the views from the residence would remain if the subject parcels were developed. But even assuming these facts are relevant after Mook (and it is not clear they are), we may not reweigh the evidence and substitute our judgment for that of the BAA. Sandra K. Morrison Tr., ¶ 9. Because the BAA’s property classification has a reasonable basis in law and is supported by substantial evidence, we may not disturb it. See O’Neil, ¶ 11. III. Attorney Fees ¶ 50 The Partnership requests an award of appellate attorney fees under section 13-17-102, C.R.S. 2023, asserting that the appeal lacks substantial justification and was brought for the purpose of delay. We deny that request. Although we have ruled against the County, its arguments did not lack substantial justification. See In re Marriage of Boettcher, 2018 COA 34, ¶ 38 (“Fees should be 
25 awarded only in clear and unequivocal cases when the appellant presents no rational argument, or the appeal is prosecuted for the purpose of harassment or delay.”), aff’d, 2019 CO 81. IV. Disposition ¶ 51 The order is affirmed. JUDGE WELLING and JUDGE TAUBMAN concur.